# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **MARNIESHEIA PERRYMOND,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:09-CV-01936-SCJ-AJB**[1] |
| | : | |
| **LOCKHEED MARTIN** | : | |
| **CORPORATION** | : | |
| *d/b/a Lockheed Martin* | : | |
| *Aeronautics Co.*, **and** | : | |
| **DR. MARK WOOD,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER FOR SERVICE OF
## REPORT AND RECOMMENDATION

Attached is the Report and Recommendation of the United States Magistrate

Judge made in accordance with 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b),

N.D. Ga. R. 72.1(B), (D), and Standing Order 08-01 (N.D. Ga. June 12, 2008).  Let the

same be filed and a copy, together with a copy of this Order, be served upon counsel

for the parties or, if a party is not represented, upon that party directly.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,

to the Report and Recommendation within **fourteen (14)** days of service of this Order.

---

[1]      The Court has consolidated this case with *Perrymond v. Wood*,
1:10-cv-1109.  [*See* Doc. 97].

AO 72A
(Rev.8/8
2)

Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this  6th  day of  February  , 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **MARNIESHEIA PERRYMOND,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:09-CV-01936-SCJ-AJB**[2] |
| | : | |
| **LOCKHEED MARTIN** | : | |
| **CORPORATION** | : | |
| *d/b/a Lockheed Martin* | : | |
| *Aeronautics Co.*, **and** | : | |
| **DR. MARK WOOD,** | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Now before the Court are motions for summary judgment filed by Defendant

Lockheed Martin Corporation ("Lockheed"), [Doc. 177], and Defendant Dr. Mark

Wood, [Doc. 178].  Both defendants seek summary judgment on all pending claims.

For the reasons set forth below, the undersigned **RECOMMENDS** that the District

Court **GRANT** the motions and **DIRECT** the Clerk to close the case.

---

[2]    The Court has consolidated this case with *Perrymond v. Wood*,
1:10-cv-1109.  [*See* Doc. 97].

AO 72A
(Rev.8/8
2)

## I.    Background

### A.    Facts

As required when considering a motion for summary judgment, the Court has viewed the evidence and factual inferences in the light most favorable to Plaintiff, the non-moving party.   *See United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).  To the extent that material facts are in dispute, the Court has resolved the disputes in Plaintiff's favor.[3]  *See Vaughan v. Cox*, 343 F.3d 1323, 1326 n.1 (11th Cir. 2003).   The pertinent facts of this case at the

---

[3]      Per the District's Local Rules, the Court will not consider a fact unless it is set out in a party's statement of material facts and supported by a citation to admissible record evidence.  *See* LR 56.1B(1), NDGa.  The Court, however, will deem such statements of fact admitted for the purposes of this Report and Recommendation ("R&R") unless the responding party "(i) directly refutes the movant's fact with concise responses supported by specific citations to evidence . . . ; (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact," is immaterial, or otherwise fails to comply with LR 56.1B(1)).  *See* LR 56.1B(2), NDGa; *see also* Fed. R. Civ. P. 56(e)(2) (allowing a court to consider a fact undisputed where a party fails to properly address the fact as required by Fed. R. Civ. P. 56(c)); *Reese v. Herbert*, 527 F.3d 1253, 1268-70 (11th Cir. 2008) (upholding the "vital function" served by Local Rule 56.1B(2)(a)); *Brandon v. Lockheed Martin Aeronautical Sys.*, 393 F. Supp. 2d 1341, 1347-48 (N.D. Ga. 2005) (Vining, J., *adopting* Johnson, M.J.) (deeming movant's statement of material facts admitted where plaintiff failed to provide relevant citations to record to support factual statements in response).   No legal conclusions will be deemed admitted.  *See* LR 56.1B(1), NDGa.

2

AO 72A
(Rev.8/8
2)

summary-judgment stage, construed in the light most favorable to Plaintiff Marniesheia Perrymond, as the non-moving party, are as follows:[4]

Before 2005, Lockheed supervisors were responsible for processing requests for leave under the Family and Medical Leave Act ("FMLA") for hourly employees at Lockheed's Marietta, Georgia facility. (LM's SMF ¶ 1; P's Resp. ¶ 1).[5] Because supervisors did not have access to employees' medical records and many were not well-versed in FMLA requirements, FMLA processing was inconsistent and abuses occurred, resulting in improperly awarded FMLA leave and losses to the company. (LM's SMF ¶¶ 2-3; P's Resp. ¶¶ 2-3; P's SMF (LM) ¶¶ 56-57; LM's Resp. ¶¶ 56-57). Wood, the Medical Director for Lockheed's Marietta facility, developed a plan to solve

---

[4]    Material facts not necessary to establishing the general background of the case will be recited and addressed in the "Discussion" section below.

[5]    Paragraph numbers preceded by "LM's SMF" refer to Defendant Lockheed Martin's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, filed in support of its motion for summary judgment, [Doc. 177-34]; paragraph numbers preceded by "W's SMF" refer to Defendant Wood's Statement of Material Facts as to Which There is No Genuine Issue to be Tried, filed in support of his motion for summary judgment, [Doc. 178-2]; and paragraph numbers preceded by "P's SMF (LM)," [Doc. 186-2 at 16-42], or "P's SMF (W)" [Doc. 185-1 at 31], refer to Plaintiff's additional statements of material fact that she contends present an issue for trial. Responses to statements of material fact shall be designated "P's Resp. LM SMF," [Doc. 186-2 at 1-15], "P's Resp. W SMF," [Doc. 185-1 at 1-30], "W's Resp. P SMF," [Doc. 199-5], or "LM's Resp. P SMF," [Doc. 196-1].

AO 72A
(Rev.8/8
2)

the problem by centralizing FMLA processing for hourly employees.[6]  (LM's SMF ¶¶ 4-5; P's Resp. ¶¶ 4-5).  In the summer of 2005, Lockheed gave Wood approval to create two new administrative positions, called FMLA Coordinators, to process hourly employees' FMLA requests in the medical department.  (LM's SMF ¶ 7; P's Resp. ¶ 7).  Although he requested permission to hire two employees as FMLA Coordinators, Lockheed gave him permission only to bring on one employee and one contractor. (LM's SMF ¶ 8; P's Resp. ¶ 8).

In July 2005, Wood posted a requisition for the FMLA Coordinator positions, and several people applied.  (LM's SMF ¶ 10; P's Resp. ¶ 10).  Wood and Kathy Isley, Wood's assistant, interviewed three of the applicants: Karen Lundy, a black female Lockheed employee; Kimberly Hatfield, a white female; and Plaintiff, a black female who was working at Lockheed's Marietta facility as a Training Coordinator on a contract basis with Raytheon Corporation.  (LM's SMF ¶¶ 11-14; P's Resp. ¶¶ 11-14; P's SMF (LM) ¶ 2; LM's Resp. ¶ 2; Deposition of MARNIESHEIA Perrymond ("Pl.'s Dep.") at 35-36).  Wood selected Lundy for the FMLA Coordinator employee

_____

[6]     Although Wood was employed by Lockheed at all times relevant to this matter, he was since terminated from Lockheed, "effective April 27, 2009." (P's SMF (W) ¶ 1; W's Resp. ¶ 1).

4

position and Plaintiff for the FMLA Coordinator contractor position. (LM's SMF ¶ 15; P's Resp. ¶ 15).

Wood instructed Plaintiff to seek out a Lockheed-approved contracting agency that could serve as a payroll source and administer her payroll temporarily, until Plaintiff would become a permanent employee. (P's SMF (LM) ¶ 14; LM's Resp. ¶ 14). After Plaintiff was offered the position and she accepted it, following Wood's instructions, she contacted Global Contract Professionals ("Global") to request that Global act as the contract payroll provider to account for her payroll and benefits. (P's SMF (LM) ¶ 17; LM's Resp. ¶ 17). Global agreed to act as Plaintiff's contract services provider. (P's SMF (LM) ¶ 18; LM's Resp. ¶ 18).

Although Lockheed approved the FMLA Coordinator contractor position for only twelve months, Wood told Plaintiff she would be made a permanent employee as soon as Lockheed funded the second FMLA Coordinator employee position, which he said he expected to happen at the beginning of 2006. (LM's SMF ¶¶ 9, 17, 42; P's Resp. ¶¶ 9, 17, 42). Wood told Plaintiff on a number of occasions after she began work in 2005 that he was waiting to hear from Lockheed management in Ft. Worth regarding the budget so that he could make her position permanent and give her a raise. (P's SMF (LM) ¶ 9; LM's Resp. ¶ 9). He also introduced Plaintiff to Lockheed

5

employees as the FMLA Coordinator who would become permanent as soon as funding became available in January 2006. (P's SMF (LM) ¶ 46; LM's Resp. ¶ 46). The initial twelve-month Global contract period was set to end on or about September 29, 2006. (LM's SMF ¶ 43; P's Resp. ¶ 43; W's SMF ¶¶ 68, 73; P's Resp. ¶¶ 68, 73).

Plaintiff's duties as an FMLA Coordinator included taking in Lockheed employees' FMLA requests, processing and filing FMLA paperwork, and coding absences as FMLA leave. (LM's SMF ¶ 44; P's Resp. ¶ 44). Her intake duties included meeting with employees who requested FMLA leave, explaining the criteria, and providing a medical certificate for the employees' physicians to complete. (LM's SMF ¶ 45; P's Resp. ¶ 45). When employees returned completed medical certification forms to Lockheed's medical department, Plaintiff was required to determine whether the employees were eligible for FMLA leave and whether they still had FMLA hours available. (LM's SMF ¶ 56; P's Resp. ¶ 56). Once an employee's FMLA leave was approved, Plaintiff was required to promptly code the leave in Lockheed's computerized attendance system. (LM's SMF ¶ 60; P's Resp. ¶ 60). She was also required to promptly file all paperwork (such as FMLA request forms and physician certifications) in the employees' FMLA files. (LM's SMF ¶ 56; P's Resp. ¶ 56).

AO 72A
(Rev.8/8
2)

Soon after accepting the FMLA Coordinator contractor position, Plaintiff perceived that FMLA leave requests made by African-American employees were often more carefully scrutinized than requests made by white employees. (P's SMF (LM) ¶¶ 58, 64; LM's Resp. ¶¶ 58, 64).  Wood and Isley also "constantly scrutinized" and second-guessed Plaintiff's analysis and decisions regarding FMLA eligibility. (P's SMF (LM) ¶¶ 60, 65; LM's Resp. ¶¶ 60, 65).  Plaintiff began to suspect that the scrutiny was a means of interfering with and discouraging African-American employees' use of FMLA leave.[7] (P's SMF (LM) ¶ 66; LM's Resp. ¶ 66).  "On at least a weekly basis," Plaintiff "pointed out" to Wood and Isley that African-American employees were treated differently from white employees seeking FMLA leave, sick leave, workers' compensation, and other forms of leave.  (P's SMF (LM) ¶ 84; LM's Resp. ¶ 84).  Plaintiff also "often pointed out to Dr. Wood and Kathy Isley when the U.S. Department of Labor FMLA handbook supported Black employees' requests

---

[7]     Plaintiff testifies that a Lockheed employee, Robert Hickey, told her that he was disciplined for tracking FMLA usage rates under Wood's program. (P's SMF (LM) ¶¶ 67-81; LM's Resp. ¶¶ 67-81).  Because these statements of material fact rely on hearsay, and Plaintiff has not otherwise shown any foundation of personal knowledge for her testimony, the Court has disregarded them.  *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007) (noting that evidence that is not admissible at trial may not be used to avoid summary judgment and that "a court is not obligated to take as true testimony that is not based upon personal knowledge").

7

for leave." (P's SMF (LM) ¶ 87; LM's Resp. ¶ 87). She perceived that "[t]hey would become visibly irritated when she did so." (P's SMF (LM) ¶ 87; LM's Resp. ¶ 87). In October 2005, Plaintiff also voiced her opposition to Wood when she became aware that he had decided to fire two pregnant employees. (P's SMF (LM) ¶¶ 89, 91-96; LM's Resp. ¶¶ 89, 91-96). Sometime in 2006, Plaintiff also noticed that all three of the African-American employees in the medical unit–herself, Lundy, and another employee–were left out of an ethics training session, and only white medical-unit employees had been invited to attend. (P's SMF (LM) ¶¶ 137-39; LM's Resp. ¶¶ 137-39).

When Plaintiff began work as an FMLA Coordinator, her performance was good.[8] (W's SMF ¶ 30; P's Resp. ¶ 30). Plaintiff's interactions with Lockheed employees were not always frictionless, however. On at least two occasions, Plaintiff corrected Lundy while she was advising employees about FMLA requests, leaving Lundy feeling undermined. (LM's SMF ¶¶ 46-47; P's Resp. ¶¶ 46-47). She also had confrontations with a couple of FMLA applicants, one of whom was a director-level

---

[8]   Plaintiff further asserts that she was still in good standing with Lockheed through at least April 3, 2006. (P's SMF (LM) ¶ 127). As evidence, she cites an ambiguous and unauthenticated e-mail between what appear to be two Global employees. (*See id.* (citing Pl.'s Decl., Ex. 5 [Doc. 186-8])). The Court must disregard this inadmissible hearsay evidence. *See Corwin*, 475 F.3d at 1249.

Lockheed employee, when Plaintiff determined they were not qualified for FMLA leave.  (P's SMF (LM) ¶¶ 109-12, 114-17; LM's Resp. ¶¶ 109-12, 114-17).

Plaintiff also always had stacks of unfiled FMLA paperwork on her desk. (W's SMF ¶ 43; P's Resp. ¶ 43).  Consequently, when other members of the medical unit would need to use a file, they first had to check Plaintiff's desk to determine whether the file was complete.  (W's SMF ¶ 44; P's Resp. ¶ 44).  At times, Plaintiff documented approved FMLA leave on employees' charts but failed to enter the code into the computer system.  (LM's SMF ¶¶ 61-62; P's Resp. ¶¶ 61-62).[9]

In January 2006, Wood hired another contract employee–who, unlike Plaintiff, was a medical doctor–as a Lockheed employee.  (P's SMF (LM) ¶ 47; LM's Resp. ¶ 47).  When Plaintiff asked Wood when she would also be made permanent, Wood told her that he was waiting on approval from Lockheed management in Ft. Worth, but that Ft. Worth management did not want to implement his FMLA coding system.  (P's SMF (LM) ¶¶ 47-49; LM's Resp. ¶¶ 47-49).  Wood did not say anything to Plaintiff about her work performance at that time.  (P's SMF (LM) ¶ 50; LM's Resp. ¶ 50).

---

[9]     Plaintiff does not directly deny these statements of fact, but instead obliquely states that she "recorded FMLA leave as trained and did so timely." (P's Resp. LM SMF ¶ 62).

AO 72A
(Rev.8/8
2)

On June 13, 2006, Wood met with Plaintiff in his office and criticized her performance. (LM's SMF ¶ 65; P's Resp. ¶ 65). He told her that her "kind and caring attitude" was causing him anxiety and that he could not "afford to have certain people mad" at him. (LM's SMF ¶¶ 65-66; P's Resp. ¶¶ 65-66). Wood told her that she was "talented," but warned her that he needed to know he could trust her and that she was on the "same team." (P's Resp. LM SMF ¶ 66; P's SMF (LM) ¶ 97; LM's Resp. ¶ 97). When Plaintiff asked Wood to be specific about a particular error, he refused to elaborate. (P's SMF (LM) ¶ 98). Wood subsequently contacted Global and told Plaintiff's recruiter that "essential parts of Plaintiff's work were not getting done" and that "[w]e'd like to do what we can to salvage this work relationship, but right now it's not working." (P's SMF (LM) ¶ 128; LM's SMF ¶¶ 70-73; P's Resp. ¶¶ 70-73).

Although Plaintiff did not raise any concerns about discrimination at the June 13 meeting, (W's SMF ¶¶ 55-56; P's Resp. ¶¶ 55-56), the meeting took place around the same time that Plaintiff told Lundy she planned to refer an employee named Mr. Bond to the Equal Employment Opportunity Commission ("EEOC") because she thought Lockheed was discriminating against him on racial grounds, (P's SMF (LM) ¶ 100;

10

LM's Resp. ¶ 100).[10]   Wood stopped speaking to Plaintiff after the meeting, (W's SMF ¶ 61; P's Resp. ¶ 61), and would ignore her requests for information, (P's SMF (LM) ¶ 104).   Plaintiff also felt humiliated when Wood would reject Plaintiff's approval of what Plaintiff believed were valid requests for leave by African-American employees.[11]   (P's SMF (LM) ¶¶ 105, 119-20; LM's Resp. ¶¶ 105, 119-20).

---

[10]   Plaintiff also asserts that Lockheed received a threat of suit regarding Crystal Collins and Lashunda Davis the same day and that Bond filed a Charge of Discrimination with the EEOC in June. [P's SMF (LM) ¶¶ 101, 103]. (Ms. Collins and Ms. Davis were the pregnant employees Wood had fired over Plaintiff's objections. (*See* P's SMF (LM) ¶¶ 91-96; LM's Resp. ¶¶ 91-96).)   Because Plaintiff relies on unauthenticated documents and her own declaration as evidence, and she provides no basis for her knowledge, these statements are inadmissible.   *See Corwin*, 475 F.3d at 1249.

[11]   Plaintiff nevertheless asserts that "[a]s late as August 30, 2006, Dr. Wood told [Plaintiff] he wanted her contract to continue for another year, which she related to [Global] as demonstrated by her e-mail relating this conversation." (P's SMF (LM) ¶ 133 (citing Pl.'s Decl. [186-3 ¶ 100, Ex. 6]; LM's Resp. ¶ 133). Plaintiff's declaration supports the statement, but the e-mail she proffers directly undermines it:  the e-mail, dated August 30, 2006, with the subject line, "Marni - job coming to an end," is one in which one Global employee writes to another that Wood "is asking [Plaintiff] to re-apply for her position" over Plaintiff's objections. (Pl.'s Decl., Ex. 6 [186-9]).   Because the contradiction in Plaintiff's own evidence is so blatant, the undersigned cannot credit this statement of material fact.   *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

11

In July 2006, Lockheed employee and EEOC investigator Michael Blakey called Plaintiff to ask her about an EEOC charge filed by Mr. Bond, an African-American employee who had been fired after Plaintiff approved him for FMLA leave and Wood subsequently denied the leave. (P's SMF (LM) ¶¶ 168, 171; LM's Resp. ¶¶ 168, 171). Plaintiff explained to Blakey "what transpired with Mr. Bond including the reversal of his approved FMLA absence coding and his termination." (P's SMF (LM) ¶ 173; LM's Resp. ¶ 173). She also told Blakey "whom to speak to regarding the facts concerning Mr. Bond, including Dr. Wood and Ms. Isley." (P's SMF (LM) ¶ 174; LM's Resp. ¶ 174). In addition, she stated to Blakey "that Lockheed discriminated against Blacks and that the Medical Unit under Dr. Wood and Ms. Isley manipulated work restrictions and absence coding to the disadvantage of Black employees such as Ms. Collins, Ms. Davis and Mr. Bond, among others." (P's SMF (LM) ¶ 175; LM's Resp. ¶ 175). She further told Blakey that, in contrast, the FMLA requests made by white employees were "granted routinely and without incident." (P's SMF (LM) ¶¶ 179-81; LM's Resp. ¶¶ 179-81).

On Friday, September 22, 2006, Wood informed Plaintiff that it was her last day of work and he would not be renewing her contract. (LM's SMF ¶ 76; P's Resp. ¶ 76). He told Plaintiff that she would no longer be working in the medical department

12

because he "had seen no change from [their] discussion in June." (LM's SMF ¶ 78; P's Resp. ¶ 78). Wood then called Plaintiff's recruiter at Global and told her that Plaintiff's contract was not being renewed and that Lockheed would pay for Plaintiff's time for the following week. (LM's SMF ¶ 80; P's Resp. ¶ 80). This was also the last day Blakey contacted Plaintiff regarding his investigation. (P's SMF (LM) ¶ 182; LM's Resp. ¶ 182).

Wood never received approval from Lockheed management to convert the FMLA Coordinator contract position to a position for a full-time employee. (W's SMF ¶ 23; P's Resp. ¶ 23). Lockheed instead gave Wood permission to replace Plaintiff with another contractor. (LM's SMF ¶ 81; P's Resp. ¶ 81). He replaced her with Margaret Benton, another African-American woman. (LM's SMF ¶ 82; P's Resp. ¶ 82). Wood renewed Benton's contract at the end of her first year, and Benton remained in the position until she voluntarily resigned when her husband was transferred out-of-state. (LM's SMF ¶¶ 83-84; P's Resp. ¶¶ 83-84).

Lockheed never considered or hired anyone for an FMLA Coordinator employee position after Plaintiff and Lundy were brought on as FMLA Coordinators. (LM's SMF ¶ 87; P's Resp. ¶ 87). Lundy is the only person Lockheed ever hired for an FMLA Coordinator employee position. (LM's SMF ¶ 88; P's Resp. ¶ 88).

13

### B.    Procedural History

On December 5, 2006, Plaintiff filed a Charge of Discrimination with the EEOC.[12] (LM's SMF ¶ 121; P's Resp. ¶ 121; Pl.'s Dep., Ex. 29). She checked boxes indicating that the alleged discrimination was based on "race" and "retaliation," and that it took place from July 31, 2006, through September 22, 2006. (Pl.'s Dep., Ex. 29). In the statement of particulars, she alleged:

I.       I began my employment with the above-named employer in September 2005, as a Family Medical Leave Act (FMLA) Coordinator. In or about July 31, 2006, I was a witness in a complaint of discrimination filed with EEOC by a former Lockheed employee. During the interview conducted by Lockheed's internal Equal Employment Office, I expressed my objection to alleged discriminatory practices related to FMLA benefits and [o]n September 22, 2006, I was discharged.

II.      The reason given for my discharge by my immediate supervisor, Dr. Wood, was that I was not on the same team with him.

III.     I believe that I have been discriminated against because of my race (Black) and in retaliation for having complained of unlawful employment practices and for having participated in a complaint of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

---

[12]      The charge was assigned EEOC No. 410-2007-00786. (Pl.'s Dep., Ex. 29).

14

IV.   I believe that Blacks as a class are discriminated against in the application and implementation of FMLA, in violation of Title [VII] of the Civil Rights Act of 1964, as amended.

(Pl.'s Dep., Ex. 29).

About six weeks later, on January 15, 2007, Plaintiff filed a voluntary petition with the United States Bankruptcy Court for the Northern District of Georgia, in which she declared bankruptcy under Chapter 13 of the bankruptcy code. (LM's SMF ¶ 119; P's Resp. ¶ 119; Pl.'s Dep., Ex. 40 at 1). Despite having filed the EEOC charge on December 5, 2006, she represented in the bankruptcy petition that she had filed no administrative proceedings within the preceding year. (LM's SMF ¶¶ 120-21; P's Resp. ¶¶ 120-21; Pl.'s Dep., Ex. 40 at 1, 7). On May 2, 2007, the bankruptcy court entered an order confirming Plaintiff's Chapter 13 plan. (Pl.'s Dep., Ex. 41). On April 10, 2008, the bankruptcy court entered an order dismissing the bankruptcy action because Plaintiff was "in material default with respect to the provisions of the confirmed plan." (P's SMF (LM) ¶ 193; LM's Resp. ¶ 193; Pl.'s Ex. 13 [Doc. 186-16]). Plaintiff had never amended the bankruptcy petition to disclose the charge of discrimination. (LM's SMF ¶ 122; P's Resp. ¶ 122).

The EEOC issued Plaintiff a Notice of Right to Sue on April 2, 2009, explaining that more than 180 days had passed since the charge was filed and that the EEOC was

15

terminating its processing of the charge.  (Pl.'s Dep., Ex. 37).  On June 30, 2009,

Plaintiff initiated this suit by filing a request to proceed *in forma pauperis* ("IFP").

[Doc. 1].   She brought claims for a declaratory judgment and damages against

Lockheed, Global, and Wood for retaliation in violation of the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA") (Count 1),

[Doc. 2 ¶¶ 24-29; Doc. 55 at 24 n.11]; willful violation of the Family and Medical

Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. (Count 2), [Doc. 2 ¶¶ 30-34;

Doc. 55 at 18];   discrimination   and   hostile   work   environment   (Count   3),

[Doc. 2 ¶¶ 35-38], and retaliation (Count 4), [*id*. ¶¶ 39-43], in violation of the Civil

Rights Act of 1866, as amended, 42 U.S.C. § 1981; and discrimination and hostile work

environment (Count 5), [*id*. ¶¶ 44-48], and retaliation (Count 6), [*id*. ¶¶ 49-53], in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e

*et seq*. ("Title VII"), and 42 U.S.C. § 1981a.[13]  She also sought punitive damages, as

---

[13]     Section 1981a is not an independent cause of action.

"Section 1981a does not create a new substantive right or cause of action.
Rather, the plain language of the statute shows that it merely provides an
additional remedy for "unlawful intentional discrimination . . . prohibited
under . . . 42 U.S.C. § 2000e-2 or 2000e-3."  42 U.S.C. § 1981a(1)(1).
Those sections of title VII, then, provide the underlying substantive right,
a right that prohibits conduct only by "employers," "employment
agencies," and "labor organizations." *See* 42 U.S.C. §§ 2000e-2, 2000e-3.

16

well as attorneys' fees and costs of litigation.[14]   [*Id.* at 18].   On July 17, 2009, the

undersigned entered an Order granting the request to proceed IFP and issued an R&R

recommending that the District Court dismiss the Title VII and ADA claims against

Wood as frivolous and permit the remaining claims to proceed.   [Doc. 3].   On

August 12, 2009, the District Court adopted the R&R.   [Doc. 5].

Lockheed waived service of process, [Doc. 10], and filed its answer on

November 2, 2009, [Doc. 19].   On November 20, 2009, Lockheed filed a motion for

partial judgment on the pleadings. [Doc. 31].   On February 3, 2010, the undersigned

entered an R&R recommending, among other things, that the District Court dismiss

Plaintiff's Title VII hostile-work-environment claim.   [Doc. 55 at 20-22, 32].   The

District Court adopted the R&R on March 9, 2010.   [Doc. 67 at 2].   On

---

*Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998); *see also Pollard v. Wawa Food Market*, 366 F. Supp. 2d 247, 251-52 (E.D. Pa. 2005) ("[T]he great weight of authority holds that § 1981a does not create an independent cause of action, but only serves to expand the field of remedies for plaintiffs in Title VII suits.") (citing cases). Accordingly, the undersigned analyzes these claims solely under Title VII.

[14]      The parties stipulated to the dismissal of additional state-law claims for intentional infliction of emotional distress (Count 7), [Doc. 2 ¶¶ 54-59]; negligent supervision and retention (Count 8), [Doc. 2 ¶¶ 60-67]; expenses of litigation pursuant to O.C.G.A. § 13-6-11 (Count 9), [Doc. 2 ¶¶ 68-70]; and punitive damages pursuant to O.C.G.A. § 51-12-5.1 (Count 10), [Doc. 2 ¶¶ 71-72], which the Court granted on March 9, 2010, [Doc. 67 at 2].

17

August 16, 2010, Plaintiff and Global filed a joint motion to dismiss the claims against Global, [Doc. 110], which the District Court granted on August 18, 2010, [Doc. 111].

After multiple issues regarding proper service of process upon Wood and the timeliness of his answer, the Court granted two consent motions that together resulted in Wood's appearance as a defendant in the case.[15]  [Docs. 97, 98].  On May 6, 2011, after an extended discovery period and numerous disputes, Plaintiff and Wood stipulated to the dismissal of Plaintiff's FMLA claims against Wood.  [Doc. 174]. Three days later, both defendants filed their motions for summary judgment. [Docs. 177, 178].  The parties completed briefing on July 19, 2011, and upon leave of Court, Plaintiff filed a surreply on September 8, 2011.[16]  With briefing completed, the undersigned turns to the merits of the motions.

---

[15]    One of the consent motions the Court granted was a motion to consolidate the later-filed *Perrymond v. Wood*, 1:10-cv-1109 (N.D. Ga.) with the instant matter. [*See* Doc. 96].  For the purposes of streamlining the docket, the undersigned now **RECOMMENDS** to the District Court that it **ADMINISTRATIVELY CLOSE** Civil Action No. 10-cv-1109 and **ORDER** that all further filings associated with Plaintiff's claims against Wood as alleged in the complaint filed in Civil Action No. 1:09-cv-1936-SCJ-AJB or in Civil Action No. 1:10-cv-1109-SCJ-AJB be entered on the docket associated with the instant case (Civil Action No. 09-cv-1936-SCJ-AJB).

[16]    On September 15, 2011, Plaintiff filed a motion to correct the surreply, which the Court granted as unopposed on October 5, 2011, *nunc pro tunc* to September 8.  [Doc. 211].

18

## II.    Legal Standard

Summary judgment is proper when no genuine issue as to any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).  The movant carries the initial burden of "informing the court of the basis for its motion and of identifying those materials that demonstrate the absence of a genuine issue of material fact." *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 840 (11th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).

The non-movant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324.  "The mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

19

AO 72A
(Rev.8/8
2)

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Id.* If the record does not blatantly contradict the non-movant's version of events, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *See Anderson*, 477 U.S. at 252; *see also EPL Inc. v. USA Fed. Credit Union*, 173 F.3d 1356, 1362 (11th Cir. 1999); *Duke v. Cleland*, 884 F. Supp. 511, 514 (N.D. Ga. 1995) (Freeman, J.).

## III.    *Discussion*

The claims Plaintiff brings under 42 U.S.C. § 1981 remain pending against both Wood and Lockheed. [*See* Doc. 2 ¶¶ 35-38 (Count 3, claiming disparate treatment and hostile work environment); *id*. ¶¶ 39-43 (Count 4, claiming retaliation)]. The other remaining claims–Count 1 (violation of the ADA), Count 2 (willful violation of the FMLA), Count 5 (discrimination, in violation of Title VII and 42 U.S.C. § 1981a), and Count 6 (retaliation, in violation of Title VII and 42 U.S.C. § 1981a)–remain pending only against Lockheed. [*See* Doc. 2 ¶¶ 24-34, 44-53]. Both defendants move for summary judgment on all of the remaining claims. The Court will first consider several overarching threshold issues and then will address threshold issues specific to

20

Plaintiff's claims.  It will then address the arguments specific to each of the remaining counts.

### A.      *Overarching Threshold Issues*

### 1.      *Prayer for Declaratory Judgment*

In her prayer for relief, Plaintiff first requests "a declaratory judgment that Defendants are in violation of the Americans with Disabilities Act, the Family Medical Leave Act, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981a . . . ."  [Doc. 2 at 18].  Neither defendant addresses Plaintiff's demand for a declaratory judgment.  [*See* Doc. 177-1; Doc. 178-1].  The undersigned nevertheless has evaluated the demand and concludes that it is subject to dismissal as a matter of law.

It is well-established that Article III of the Constitution limits federal courts to adjudicating only actual cases or controversies.  *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *Allen v. Wright*, 468 U.S. 737, 750 (1984)).  In a case in which the plaintiff brings a declaratory-judgment action, "[i]n order to demonstrate that a case or controversy exists," the "plaintiff must allege facts from which it appears there is a substantial likelihood that [s]he will suffer injury in the future." *Malowney*, 193 F.3d at 1346 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95,

AO 72A
(Rev.8/8
2)

102 (1983)). In other words, the Declaratory Judgment Act, 28 U.S.C. § 2201, permits a court to declare rights *before* they are violated. *Malowney*, 193 F.3d at 1347.

Here, Plaintiff seeks declaratory judgment not to guide the parties concerning future action, but instead to clarify whether past actions by Defendants were appropriate or legal. Plaintiff's employment at Lockheed ended on or about September 22, 2006. (*See* LM's SMF ¶ 76; P's Resp. ¶ 76). Thus, any discriminatory or retaliatory activity took place more than five years ago. Given that Plaintiff seeks a declaration as to whether Defendants' past acts violated law, the Declaratory Judgment Act is not the appropriate vehicle for her claims. *See Great Lakes Reinsurance (UK) PLC v. TLU Ltd.*, No. 07-61259-CIV, 2008 WL 828122, at *1 (S.D. Fla. Mar. 27, 2008) ("The point of a declaratory judgment is to permit 'actual controversies to be settled before they ripen into violations of law,' not to adjudicate past conduct.") (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2751 (3d ed. 2004)); *see also SBA Commc'ns, Inc. v. Zoning Comm'n*, 96 F. Supp. 2d 139, 141 (D. Conn. 2000) ("[D]eclaratory judgment is not an appropriate remedy for past misconduct."); *Gruntal & Co. v. Steinberg*, 837 F. Supp. 85, 89 (D.N.J. 1993) ("A declaratory judgment is inappropriate solely to adjudicate past conduct."); and *Hoagy Wrecker Serv., Inc. v. City of Fort Wayne*,

22

776 F. Supp. 1350, 1358 (N.D. Ind. 1991) (dismissing a claim for declaratory judgment where "a declaration of the parties' rights [would] not prevent the accrual of avoidable damages").

Thus, the undersigned *sua sponte* **RECOMMENDS** to the District Court that it **DISMISS** Plaintiff's claim for a declaratory judgment, [Doc. 2 at 18]. *See* Fed. R. Civ. P. 56(f). Should Plaintiff believe that she has grounds upon which to challenge the undersigned's conclusion, she shall have the opportunity to file her objections during the fourteen-day period following the entry of this R&R. The undersigned now turns to the arguments presented in Defendants' motions for summary judgment.

### 2.      *Effect of Bankruptcy Proceedings*

Defendants first argue that Plaintiff's claims for money damages should be dismissed due to events that took place during Plaintiff's 2007 bankruptcy proceedings. [Doc. 177-1 at 13; Doc. 178-1 at 9]. Wood contends that Plaintiff's claims should be dismissed either because, by filing for bankruptcy protection, Plaintiff gave up her standing to bring suit in favor of the bankruptcy trustee, or because Plaintiff failed to disclose the claims to the bankruptcy court and, therefore, the claims are subject to judicial estoppel. [Doc. 178-1 at 9-15]. Lockheed joins in the argument for

23

application of judicial estoppel.  [Doc. 177-1 at 13-15].  Plaintiff, in turn, argues that

because she never received a bankruptcy discharge, she has standing to pursue her

damages claims.  [Doc. 185 at 22-23; Doc. 186 at 22-24].  She also contends that her

non-disclosure was inadvertent and therefore should be excused.  [Doc. 185 at 22-25;

Doc. 186 at 22-24].

### a.    Standing

Wood contends that the trustee has exclusive standing to pursue a bankruptcy

petitioner's potential cause of action, and therefore Plaintiff's Chapter 13 filing

divested her of standing to pursue the claims she brings in this suit.

[Doc. 178-1 at 10-11 (citing *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268

(11th Cir. 2004); *Barger v. City of Cartersville*, 348 F.3d 1289, 1292 (11th Cir. 2003)].

He reasons that pursuant to 11 U.S.C. § 554(a)-(c), property that is not administered

under the bankruptcy proceeding or abandoned by the trustee remains the property of

the bankruptcy estate.  [Doc. 178-1 at 10-11 & n.51].  This appears to be well-settled

with regard to causes of action that have accrued prior to initiation of *Chapter 7*

bankruptcy proceedings.  *See, e.g., Parker*, 365 F.3d at 1272 (citing 11 U.S.C. § 541);

*Barger*, 348 F.3d at 1292; *In re Alvarez*, 224 F.3d 1273, 1278 n.12 (11th Cir. 2000).

Ambiguity appears to linger, however, with regard to a *Chapter 13* debtor's standing

24

to pursue a pre-petition claim. *See Bennett v. Flagstar Bank*, No. CV 210-181, 2011 WL 6152940, at *2 (S.D. Ga. Dec. 8, 2011) (citing myriad recent Eleventh Circuit district-court and bankruptcy-court cases and concluding that a Chapter 13 debtor, unlike a Chapter 7 debtor, retains standing to pursue legal causes of action the debtor held at the commencement of the bankruptcy case).

Moreover, Wood does not proffer any authority showing that property remains vested in the bankruptcy estate when the bankruptcy case is dismissed before the debtor completes the plan and the matter is closed.[17]  [*See* Docs. 177-1 & 178-1, *passim*]. Although Plaintiff's brief also contains no legal authority on the standing issue, the Court's own research suggests that because Plaintiff's bankruptcy petition was dismissed rather than closed, she is not necessarily precluded from bringing her claim.

---

[17]    In fact, in *Crosby v. Mobile Cnty.*, Civil Action No. 04-0144-CG-M, 2007 WL 4125895 (S.D. Ala. Nov. 14, 2007), a case Wood cites in footnotes 52 and 53 of his brief, [Doc. 178-1], the court held that because the plaintiff filed for relief under Chapter 13 rather than Chapter 7, unless the plan provided otherwise, the debtor remained in possession of all property of the estate and therefore was the proper party to bring suit. *Crosby*, 2007 WL 4125895, at *1.  The other cases cited by Wood, *Counts v. Red Coats, Inc.*, Civil Action No. 1:09-CV-3038-TWT-ECS, 2010 WL 2674423 (N.D. Ga. May 28, 2010), and *Kennedy v. Jim's Formal Wear Co.*, No. CIVA1:05CV1280JEC, 2006 WL 2661264 (N.D. Ga. Sept. 14, 2006), examined the plaintiffs' standing to bring claims after their Chapter 7 petitions resulted in discharge of the plaintiffs' unsecured debts; these cases, therefore, are inapposite here. *See Counts*, 2010 WL 2674423, at *1, 3-4; *Kennedy*, 2006 WL 2661264, at *1.

25

AO 72A
(Rev.8/8
2)

"Unless the court, for cause, orders otherwise," dismissal of a bankruptcy case generally "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ." 11 U.S.C. § 349(b)(3). The purpose of the statute addressing the effect of dismissal of a bankruptcy case is to "undo" the bankruptcy case as far as is practicable and restore all property rights to the status existing immediately prior to the petition; therefore, upon dismissal, estate property that had been part of the bankruptcy trust is again vested in the debtor. *See, e.g., In re Steenstra*, 307 B.R. 732, 737-38 (B.A.P. 1st Cir. 2004) ("[S]ince dismissal of the bankruptcy case revests the property of the estate in the party that owned it prior to the filing of the petition, there is no bankruptcy estate after the dismissal has been entered.") (citation omitted); *In re Nash*, 765 F.2d 1410, 1414 (9th Cir. 1985); *In re Wcislak*, 446 B.R. 827, 828 (Bankr. N.D. Ohio 2011); *In re Lewis*, 346 B.R. 89, 104 (Bankr. E.D. Pa. 2006); *In re Searcy*, 313 B.R. 439, 442-43 (Bankr. W.D. Ark. 2004); *In re Ramirez*, 283 B.R. 156, 160 (Bankr. S.D.N.Y. 2002).

Defendants have not put forth any evidence that upon dismissal, the bankruptcy court ordered Plaintiff's employment claims vested in anyone other than Plaintiff. Consequently, the undersigned **RECOMMENDS** that the District Court **DENY** Wood's motion for summary judgment on this ground.

26

AO 72A
(Rev.8/8
2)

### b.      Estoppel

Both defendants contend that Plaintiff's failure to disclose her employment-discrimination claims in her bankruptcy disclosures subject those claims to dismissal on grounds of judicial estoppel. [Doc. 177-1 at 13-16; Doc. 178-1 at 9-15].

"A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) (citing 11 U.S.C. §§ 521(1), 541(a)(7)); *accord DeLeon v. Comcar Indus., Inc.*, 321 F.3d 1289, 1291 (11th Cir. 2003) (finding that "the need for complete and honest disclosure" applies in Chapter 7 and Chapter 13 bankruptcy cases). The judicial-estoppel doctrine bars a plaintiff from asserting money-damages claims previously undisclosed to the bankruptcy court where "the plaintiff both knew about the undisclosed claims and had a motive to conceal them from the bankruptcy court." *DeLeon*, 321 F.3d at 1291; *accord Barger*, 348 F.3d at 1297 (also concluding that an injunctive-relief claim that added no monetary value to the bankruptcy estate would not be barred by the doctrine of judicial estoppel). "The purpose of the doctrine, 'is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.' " *Burnes*, 291 F.3d at 1285 (quoting *New Hampshire v.*

27

*Maine*, 532 U.S. 742, 749-50 (2001)).  "Judicial estoppel is an equitable doctrine, and

the decision whether to invoke it is within the court's discretion."  *Evans v. Potter*,

Civil   Action   File   No.   1:08-CV-1687-TWT,   2009 WL   529599,   at   *2

(N.D. Ga. Feb. 27, 2009) (Thrash, J., *adopting* Brill, M.J.) (alterations and internal

quotation marks omitted) (quoting *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir.

1999)).

In the Eleventh Circuit, two factors are considered in determining whether

judicial estoppel should apply to a particular case: " 'First, it must be shown that the

allegedly inconsistent positions were made under oath in a prior proceeding.  Second,

such inconsistencies must be shown to have been calculated to make a mockery of the

judicial system.' "  *Burnes*, 291 F.3d at 1285 (quoting *Salomon Smith Barney, Inc. v.

Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001)).   The factors are "not inflexible

or exhaustive," however, and "courts must always give due consideration to all of the

circumstances of a particular case when considering the applicability of [the] doctrine."

*Burnes*, 291 F.3d at 1286.

In the instant case, there is no dispute that Plaintiff filed inconsistent positions

under oath.  Plaintiff filed her EEOC charge on December 5, 2006. (LM's SMF ¶ 121;

P's Resp. ¶ 121).  On January 15, 2007, less than six weeks later, Plaintiff filed a

28

voluntary petition with the United States Bankruptcy Court for the Northern District of Georgia, in which she declared bankruptcy under Chapter 13 of the bankruptcy code. (LM's SMF ¶ 119; P's Resp. ¶ 119; Pl.'s Dep., Ex. 40 at 1).  Plaintiff represented in the bankruptcy petition that she had filed no administrative proceedings within the preceding year.  (LM's SMF ¶ 121; P's Resp. ¶ 121; Pl.'s Dep., Ex. 40 at 1, 7).  She never amended the bankruptcy petition to disclose the charge.  (LM's SMF ¶ 122; P's Resp. ¶ 122).  Because there is no question that Plaintiff's disclosures were inconsistent with the EEOC charge and were submitted under oath to the bankruptcy court, "the issue becomes one of intent."  *See Burnes*, 291 F.3d at 1286.

Plaintiff denies that she intended to manipulate the court system to her advantage.  She states that a paralegal at the law firm that represented her in the bankruptcy action told her that an EEOC charge would not be considered a "claim" for the purposes of her Chapter 13 filing.  (P's SMF (LM) ¶ 191; Pl.'s Decl. [Doc. 185-2] ¶ 130).  Accordingly, she contends that her non-disclosure was inadvertent and therefore should be excused.  [Doc. 185 at 22-25; Doc. 186 at 22-24].  Plaintiff also states that her "bankruptcy petition was withdrawn when she could not

29

make payments according to schedule," and therefore no discharge was entered.[18] (P's SMF (LM) ¶ 193; Pl.'s Decl. [Doc. 185-2] ¶ 130 & Ex. 13).  She therefore argues that because there was no discharge, she did not take advantage of the judicial system. [Doc. 185 at 25; *see also* Doc. 186 at 22-24].  Plaintiff further contends that because neither the FMLA nor the 42 U.S.C. § 1981 claims were subject to a pending administrative proceeding at the time she filed her bankruptcy petition, and because she did not file suit on those claims until after her bankruptcy case was dismissed, only the ADA and Title VII claims–which were pending before the EEOC at the time of her bankruptcy filing–could be subject to Defendants' estoppel theory. [Doc. 185 at 25 n.2].

The undersigned is unpersuaded by Plaintiff's argument that her non-disclosure was inadvertent.  Even assuming that Plaintiff failed to list her employment-discrimination claims on the schedule of assets under the direction of her attorney's paralegal, this is not grounds to excuse the omission.  *See Barger*, 348 F.3d at 1295.  As the Eleventh Circuit has explained, " '[Plaintiff] voluntarily chose this attorney as [her] representative in the action, and [s]he cannot now avoid the

---

[18]    On April 10, 2008, the bankruptcy court declared Plaintiff "in material default with respect to the provisions" of her bankruptcy plan and ordered the case dismissed.  (P's SMF (LM) ¶ 193; LM's Resp. ¶ 193; Pl.'s Ex. 13 [Doc. 186-16]).

AO 72A
(Rev.8/8
2)

consequences of the acts or omissions of this freely selected agent.' " *Id.* (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962)).  Moreover, pursuant to Eleventh Circuit precedent, a debtor's failure to provide full financial disclosure "is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment."  *Barger*, 348 F.3d at 1296 (quoting *Burnes*, 291 F.3d at 1287).  Plaintiff admits that she knew of her EEOC charge when she filed her bankruptcy petition.  (*See* P's SMF (LM) ¶ 191).  By omitting the employment-discrimination claims from her schedule of assets, she avoided the risk of the claims and any potential proceeds becoming part of the bankruptcy estate.  Thus, Plaintiff's knowledge of her employment-discrimination claims and motive to conceal them "are sufficient evidence from which to infer her intentional manipulation."  *Barger*, 348 F.3d at 1296.

Further, the record shows that the omission from the schedule of assets was not Plaintiff's only failure to disclose the intersection of her bankruptcy proceedings and her employment-discrimination claims:  on January 25, 2010, in response to an interrogatory from Defendant Lockheed requesting that Plaintiff identify all of the bankruptcy proceedings to which she had been a party, she disclosed a 2000 bankruptcy filing but not the 2007 filing. (LM's SMF ¶ 123; P's Resp. ¶ 123; Pl.'s Dep. at 243-44,

31

Ex. 38 at 33-35, Ex. 41 at 4-6). The undersigned finds that this additional unexplained omission further undermines the credibility of Plaintiff's "inadvertence" argument and cuts against any inference that Plaintiff omissions were made in good faith.

Plaintiff's contention that her claims should not be subject to judicial estoppel because she never received a bankruptcy discharge is also unavailing. "Chapter 13 allows a portion of a debtor's future earnings to be collected by a trustee and paid to creditors." *Burnes*, 291 F.3d at 1283 n.1. The debtor does not receive a discharge. *Id.* Instead, "the debtor is allowed to extend or reduce the balance of his debts through a plan of rehabilitation." *Id.* The record reveals that on May 2, 2007, the bankruptcy court entered an order confirming Plaintiff's Chapter 13 plan, (Pl.'s Dep., Ex. 41), and that Plaintiff's bankruptcy case was dismissed only when she did not maintain the payments, (P's SMF (LM) ¶ 193; Pl.'s Decl. [Doc. 185-2] ¶ 130; Pl.'s Ex. 13 [Doc. 186-16]). Thus, it appears that for at least some period of time, Plaintiff did benefit from her bankruptcy filing. Moreover, the fact that Plaintiff's bankruptcy case was dismissed before the plan was complete does not preclude the Court from determining that judicial estoppel bars her claims because "the relevant inquiry is [Plaintiff's] intent *at the time of nondisclosure*." *See Casanova v. Pre Solutions, Inc.*, 228 Fed. Appx. 837, 841 (11th Cir. Mar. 28, 2007).

32

Finally, the undersigned rejects Plaintiff's contention that because neither her FMLA nor her 42 U.S.C. § 1981 claims were subject to a pending administrative proceeding at the time she filed her bankruptcy petition and she did not file suit on those claims until after her bankruptcy case was dismissed, only the ADA and Title VII claims–which were pending before the EEOC at the time of her bankruptcy filing–could be subject to Defendants' estoppel theory.  [*See* Doc. 185 at 25 n.2]. Judges in this district have held that knowledge of accrued claims can be present–and trigger a duty to disclose in bankruptcy court–even when the plaintiff has not yet filed a lawsuit or an administrative claim.  *See, e.g., Walker v. Delta Air Lines, Inc.*, No. Civ. A. 100cv558-TWT, 2002 WL 32136202, at *3 (N.D. Ga. Aug. 1, 2002) (Walker, M.J.), *adopted*, No. Civ. A. 100cv558-TWT (N.D. Ga.  Sept. 9, 2002); *see also Evans*, 2009 WL 529599, at *2 ("Any claim with potential must be disclosed . . . .").  Under the general accrual rule, " 'the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action.' " *Calhoun v. Ala. Alcoholic Beverage Control Bd.*, 705 F.2d 422, 424 (11th Cir. 1983) (42 U.S.C.

33

§ 1983 case)[19] (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)[20]); *accord*

*Williams v. Nw. Airlines, Inc.*, 53 Fed. Appx. 350, 352 (6th Cir. Dec. 18, 2002) (finding

that the plaintiff's FMLA claim accrued on the date he was terminated); *McCully v. Am.*

*Airlines, Inc.*, 695 F. Supp. 2d 1225, 1251 (N.D. Okla. 2010) (finding that the FMLA

claim accrued on the date on which the last act constituting retaliation occurred).  The

last event underlying any of Plaintiff's claims was the conversation that took place on

September 22, 2006, when Wood informed Plaintiff that it was her last day and that he

would not be renewing her contract.  (*See* LM's SMF ¶ 76; P's Resp. ¶ 76).  This was

approximately four months before Plaintiff filed her bankruptcy petition in

January 2007.  Accordingly, all of Plaintiff's claims–not just those raised in Plaintiff's

EEOC charge–had accrued prior to her erroneous bankruptcy filing and therefore are

subject to bar by judicial estoppel.

Having considered all the circumstances of the case, the undersigned finds

significant evidence that Plaintiff intentionally manipulated the court system to her

_____

[19]     "[C]laims under § 1981 are treated the same as those under § 1983" for the purposes of determining accrual of a claim and the limitations period.  *Shows v. Morgan*, 40 F. Supp. 2d 1345, 1362 (M.D. Ala. 1999).

[20]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/8
2)

advantage and little reason to believe that application of judicial estoppel would be inappropriate in this matter.  Consequently, the undersigned **RECOMMENDS** to the District Court that it **GRANT** Defendants' motions for summary judgment on Plaintiff's claims for damages on grounds of judicial estoppel.  In the event that the District Court declines to exercise its discretion to do so, the undersigned next considers Defendants' motions for summary judgment on each of Plaintiff's claims.

### B.      *Claim-Related Threshold Issues*

Before reaching the parties' merits-based arguments, the undersigned will first examine certain threshold issues Defendants raise regarding Plaintiff's causes of action. The undersigned will first address Lockheed's argument that it was not Plaintiff's "employer" for the purposes of liability under Title VII or the ADA.  The undersigned will then consider Defendants' arguments regarding the timeliness of certain of Plaintiff's § 1981 claims and whether she properly exhausted her administrative remedies before filing her Title VII and ADA claims.

### 1.      *Whether Lockheed was Plaintiff's Employer*

Lockheed argues that it is entitled to summary judgment on Plaintiff's ADA and Title VII claims because it was not Plaintiff's employer.  [Doc. 177-1 at 16-17; Doc. 196 at 12-15].  Plaintiff contends that Lockheed and Global were joint employers

35

that both maintained control over Plaintiff's employment, and therefore suit against Lockheed is proper.   [Doc. 186 at 24-25].   Lockheed does not deny that a joint employer may be sued under the ADA and Title VII; instead, it insists that Global was Plaintiff's sole employer.[21]   [Doc. 196 at 12-15].

Lockheed points to *Ferrill v. Parker Group, Inc*., 168 F.3d 468 (11th Cir. 1999), in support of its argument.   [Doc. 177-1 at 17 (citing *Ferrill*, 168 F.3d at 471 n.4)].   The case is of little help to the Court in this matter.   In *Ferrill*, the court noted simply that because the plaintiff was the employee of a temporary placement agency, she was precluded from bringing a Title VII suit against the company where she was temporarily placed.   *Ferrill*, 168 F.3d at 471 n.4.   This aspect of the *Ferrill* decision is neither binding nor persuasive.   The identity of the plaintiff's employer or employers

_____

[21]      The Eleventh Circuit has recognized that Title VII permits plaintiffs to bring claims against more than one employer in joint-employment situations. *See Virgo v. Riviera Bach Assocs., Ltd.*, 30 F.3d 1350, 1359-61 (11th Cir. 1994).   Courts have also recognized that two defendants may be liable as joint employers under the ADA. *Perrymond v. Lockheed Martin Corp*., Civil Action File No. 1:09-CV-1936-TWT, 2009 WL 2474226, at *5, n.7 (N.D. Ga. Aug. 12, 2009) (Thrash, J., *adopting* Baverman, M.J.) (citing *Swallows v. Barnes & Noble Book Stores, Inc*., 128 F.3d 990, 993 (6th Cir. 1997), and *Zillyette v. Capital One Fin. Corp*., 1 F. Supp. 2d 1435, 1444 (M.D. Fla. 1998)).   Although Lockheed does not address the issue, the undersigned notes that this district has also recognized that joint employers may be liable under § 1981.   *See Greason v. Se. R.R. Assoc. Bureaus*, 650 F. Supp. 1, 4 (N.D. Ga. 1986) (Ward, J.) (citing cases).

36

was not among the issues before the *Ferrill* Court, and therefore, the finding is dicta. *See id.* at 471. Moreover, the *Ferrill* Court did not conduct any analysis or describe its reasoning in reaching its conclusion. *See id.* at 471 n.4. Thus, *Ferrill* does not aid the undersigned in resolving the joint-employment issue presently before the Court.

The Eleventh Circuit "interpret[s] the term 'employer' liberally." *Virgo*, 30 F. 3d at 1359. Two defendants are joint employers "where [the] two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999).

"To determine whether an individual is an employee or an independent contractor for purposes of Title VII [and the ADA], the Eleventh Circuit . . . applies the hybrid 'economic realities' test . . . ."[22] *Moody v. Coliseum Psychiatric Ctr., LLC*, No. 5:04-CV-364(DF), 2006 WL 1652281, at *6 (M.D. Ga. June 12, 2006) (citing *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340 (11th Cir. 1982), and *Cuddeback v. Fla. Bd. of Educ.*, 381 F3d 1230, 1234 (11th Cir. 2004)); *see also Lerohl v. Friends of Minn.*

---

[22]     Because the ADA's definitions of "employer" and "employee" are similar to the Title VII definitions, "the joint employer liability standard for Title VII cases would presumably apply to ADA cases," *Perrymond*, 2009 WL 2474226 at *5, n.7 (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007)), as would the analysis for determining whether a plaintiff is an "employee" of a joint employer.

37

AO 72A
(Rev.8/8
2)

*Sinfonia*, 322 F.3d 486, 489 (8th Cir. 2003) (applying the same test to determine whether a worker was an "employee" under Title VII or the ADA).    The economic-realities test "takes into account both the economic realities of the employment relationship and traditional common-law agency principles, including the employer's 'right to control and direct the work of an individual, not only as to the results to be achieved, but also as to the details by which that result is achieved.' " *Moody*, 2006 WL 1652281, at *6 (quoting *Cobb*, 673 F.2d at 340).

The Eleventh Circuit has identified a number of factors for review under the economic-realities test. "[T]he extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor.' " *Moody*, 2006 WL 1652281, at *6 (quoting *Cobb*, 673 F.2d at 340).  Other relevant factors may include

> (1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the 'employer' or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship was terminated; i.e. by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the 'employer;' (9) whether the worker accumulates retirement

38

benefits; (10) whether the 'employer' pays social security taxes; and (11) the intention of the parties.

*Moody*, 2006 WL 1652281, at *7 (quoting *Cobb*, 673 F.2d at 340).  No single factor is determinative, however, and the Court must consider the entirety of the circumstances. *Cobb*, 673 F.2d at 340; *Moody*, 2006 WL 1652281, at *6.

Applying these factors to the evidence the parties have presented, the undersigned concludes that Plaintiff has proffered evidence sufficient to allow a reasonable jury to conclude that, more likely than not, she was Lockheed's employee for the purposes of the ADA and Title VII.  Although Global, in Plaintiff's contract, reserved the right to modify Plaintiff's work assignment, (LM's SMF ¶ 26; P's Resp. ¶ 26), Plaintiff shows that Lockheed overwhelmingly controlled the "means and manner" by which Plaintiff performed her work.  Plaintiff's contract with Global provided that Plaintiff would work under Lockheed supervision, (P's Resp. LM SMF ¶ 24, Pl.'s Dep., Ex. 10 ¶ 4), and, in fact, Wood and Isley did control Plaintiff's training, business cards,[23] location, and manner of work.

---

[23]     After being hired, Plaintiff was given business cards bearing the Lockheed logo and identifying her by name as a Lockheed FMLA Coordinator. (P's SMF (LM) ¶ 23; LM's Resp. ¶ 23).  On the cards appeared the address and telephone number of Lockheed's Marietta facility and Plaintiff's personalized Lockheed e-mail address.  (P's SMF (LM) ¶ 23; LM's Resp. ¶ 23).  Global was not mentioned on the business cards.  (P's SMF (LM) ¶ 23; LM's Resp. ¶ 23).

39

(P's SMF (LM) ¶¶ 25, 33; LM's Resp. ¶¶ 25, 33).  They also controlled her work hours:

during the time she was based at Lockheed, Plaintiff was required to follow Lockheed's

"9/80" work schedule, which provided for eighty hours of work over nine days, with

every other Friday off.  (P's SMF (LM) ¶ 42; LM's Resp. ¶ 42).  Wood also authorized

Plaintiff to work overtime hours.[24]  (P's SMF (LM) ¶ 44; LM's Resp. ¶ 44).  Although

Global paid Plaintiff, Global could not forward Plaintiff's pay until Wood approved her

time in Lockheed's payroll system, which he did weekly.  (*See* P's SMF (LM) ¶ 27;

LM's Resp. ¶ 27).  Global did not direct or control Plaintiff in any of these areas of her

employment.  (*See* P's SMF (LM) ¶¶ 25-26; LM's Resp. ¶¶ 25-26).

Also supporting Plaintiff's position is the fact that Lockheed supplied Plaintiff's

work location and equipment, including her desk and computer.

(*See* P's SMF (LM) ¶¶ 15, 25; LM's Resp. ¶¶ 15, 25).  Wood's power over Plaintiff's

continued employment also militates in Plaintiff's favor.  Wood had the power to

terminate Plaintiff from the FMLA Coordinator position at any time and for any reason.

(P's SMF (LM) ¶ 40; LM's Resp. ¶ 40).  When Plaintiff's employment ended, it was

as a result of Wood's unilateral decision; neither Plaintiff nor Global were involved in

---

[24]     Plaintiff, with Wood's permission, worked on most off-Fridays to try to catch up on her filing.  (LM's SMF ¶ 58; P's Resp. ¶ 58; P's SMF (LM) ¶ 44; LM's Resp. ¶ 44).

AO 72A
(Rev.8/8
2)

the decision.  (P's SMF (LM) ¶ 132; LM's Resp. ¶ 132).  Wood notified Plaintiff of his decision first and then contacted Global.  (P's SMF (LM) ¶ 136; LM's Resp. ¶ 136).

Finally, there is evidence that Wood intended to treat Plaintiff as an employee and simply used Global as a payroll provider.  It is undisputed that Plaintiff understood that she was brought on at Lockheed as a contractor.  (LM's SMF ¶¶ 17-22; P's Resp. ¶¶ 17-22).  Plaintiff testifies, however, that Wood told her that the FMLA Coordinator position would become a permanent Lockheed position, with full benefits, in January 2006.  (P's SMF (LM) ¶¶ 13, 16).  She also testifies that Wood introduced her to Lockheed employees as an FMLA Coordinator who would become permanent.  (P's SMF (LM) ¶ 46).  Lockheed does not deny that Wood made the statements; instead it relies on Wood's oblique testimony that he did not have assurance of funding for the position and that he informed Plaintiff at the time he interviewed her that he could not hire her as an employee.  (LM's Resp. P's SMF ¶¶ 13, 16, 46).  Lockheed also fails to contradict Plaintiff's testimony that Wood instructed Plaintiff to seek out a Lockheed-approved contracting agency that could serve as a temporary payroll source and administrator until she became a permanent employee.  (*See* P's SMF (LM) ¶¶ 14, 19, 30; LM's Resp. ¶¶ 14, 19, 30).  Thus, it appears that Plaintiff's contractor status was largely a formality.

41

The undersigned recognizes that Lockheed presents evidence supporting the opposite conclusion.  Global was identified as Plaintiff's employer on her W-4 form, and Global withheld Plaintiff's taxes.  (LM's SMF ¶ 33; P's Resp. ¶ 33).  Global provided Plaintiff with workers'-compensation insurance while she was assigned to the FMLA Coordinator position at Lockheed.  (LM's SMF ¶ 35; P's Resp. ¶ 35).  Global accounted for Plaintiff's payroll and benefits, (P's SMF (LM) ¶ 17; LM's Resp. ¶ 17), and Plaintiff was required to–and did–refer questions regarding personnel matters to Global, (LM's Resp. P's SMF ¶ 25; LM's SMF ¶¶ 24-25; P's Resp. ¶¶ 24-25).  This included questions about "rates, classifications, payroll, insurance, security clearance, et cetera."  (LM's SMF ¶ 24; P's Resp. ¶ 24).  Global also set Plaintiff's per diem allowance, her travel allowance, and her pay.  (LM's SMF ¶ 23; P's Resp. ¶ 23).  Plaintiff's contract with Global also specifically prohibited her from soliciting or accepting employment with Lockheed for a period of 120 days after termination of her employment with Global, unless she gained Global's permission.  (LM's SMF ¶ 29; P's Resp. ¶ 29).

Nevertheless, the undersigned is not convinced that Lockheed's evidence so completely overwhelms Plaintiff's that it requires a finding that as a matter of law, Plaintiff could not have been Lockheed's "employee" for the purposes of her ADA and

42

Title VII claims. *Cf. Demers v. Adams Homes of Nw. Fla., Inc.*, 321 Fed. Appx. 847, 852 (11th Cir. Mar. 20, 2009) (affirming summary judgment for the employee because no material facts were in dispute with regard to her "employee" status). Thus, the undersigned **RECOMMENDS** to the District Court that, in the event it does not grant Lockheed's motion for summary judgment on Plaintiff's Title VII and ADA claims on other grounds, it allow a jury to determine whether Lockheed was Plaintiff's employer for the purposes of Title VII and ADA liability.

### 2. *Whether Plaintiff's § 1981 Failure-to-Hire Claims Are Time-Barred*

Plaintiff brings claims against both Wood and Lockheed for discrimination, "hostile environment," and retaliation, pursuant to 42 U.S.C. § 1981. [Doc. 2 ¶¶ 35-43]. It is unclear, however, upon exactly what grounds Plaintiff raises the claims. [*See id.*]. Both defendants contend that, to the extent that Plaintiff's § 1981 claims are grounded upon Defendants' failure to hire her as a Lockheed employee, those claims are time-barred. [Doc. 177-1 at 22-23, Doc. 178-1 at 15-17]. Plaintiff does not respond directly to the argument. [*See* Docs. 185, 186, *passim*]. In his reply brief filed in support of his motion for summary judgment, however, Wood generously interprets Plaintiff's response as having argued that her § 1981 claims are not

43

time-barred because (1) the refusal-to-hire claim "exists in perpetuity because she was never hired," and (2) her failure-to-hire claim was in fact a retaliatory-termination claim, which carries a longer limitations period.  [Doc. 199 at 3-4].

A § 1981 discriminatory failure-to-hire claim carries a two-year limitations period, and a § 1981 retaliatory-termination claim carries a four-year limitations period. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 972 n.35 (11th Cir. 2008). Plaintiff initiated this suit on June 30, 2009.[25]  [*See* Doc. 1].  Therefore, any failure-to-hire claim accruing prior to June 30, 2007, and any retaliatory-termination claim accruing prior to June 30, 2005, would be time-barred under § 1981.  *See Davis,* 516 F.3d at 972 n.35; *Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1218 (11th Cir. 2001) (providing that the statute of limitations begins to run when the cause of action accrues).

-------

[25]     Wood asserts that Plaintiff filed her complaint against him on April 14, 2010.  [Docs. 178 at 1, 178-1 at 16].  Because Wood's assertion does not contain a citation to the record and because the docket shows that Wood was, in fact, named in the original complaint, [Doc. 2], and served in this matter on March 14, 2010, [Doc. 69], the undersigned is unpersuaded that Wood enjoys a later filing date and corresponding limitations period.  The Court is under no obligation to supplement underdeveloped summary-judgment arguments. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1999); *Tomasini v. Mt. Sinai Med. Ctr. of Fla., Inc.*, 315 F. Supp. 2d 1252, 1260 n.11 (S.D. Fla. 2004).

AO 72A
(Rev.8/8
2)

The question of accrual is a matter of federal law. *See Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996) ("Federal law determines when a federal civil rights claim accrues."). Under the general accrual rule, " 'the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action.' " *Calhoun*, 705 F.2d 422 at 424 (42 U.S.C. § 1983 case) (quoting *Lavellee*, 611 F.2d at 1130)[26]; *see also Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (indicating that "the proper focus [for determining when the statute of limitations begins to run] is on the time of the discriminatory act, not the point at which the consequences of the act become painful") (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *Everett v. Cobb Cnty. Sch. Dist.*, 138 F.3d 1407, 1410 (11th Cir. 1998) ("Claims of discrimination accrue when the plaintiff is informed of the discriminatory act."); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385-86, 1390 (3d Cir. 1994) (indicating that a cause of action accrues when the actual injury occurs, not the legal injury, *i.e.*, the facts that support a cause of action). However, federal courts apply an equitable modification to the accrual rule such that a statute will not run "until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard

---

[26]     "[C]laims under § 1981 are treated the same as those under § 1983" for the purposes of determining accrual of a claim and the limitations period. *Shows*, 40 F. Supp. 2d at 1362.

45

for his rights." *Calhoun*, 705 F.2d at 424 (quoting *Reeb v. Econ. Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir. 1975)); *see also Cooper v. S. Co.*, 390 F.3d 695, 734 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006); *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir. 1987).[27]

The undersigned concludes that to the extent Plaintiff raises her § 1981 claim as a failure-to-hire action, it is untimely. It appears that Plaintiff's cause of action could have accrued as early as January 2006, when Wood did not add her as a full-time Lockheed employee during that time period, as he promised. (*See* P's SMF (LM) ¶¶ 13, 16). Regardless, whether Plaintiff knew or should have known in January 2006 that she would not be added as a full-time Lockheed employee, it became unarguably apparent on September 22, 2006, when Wood called Plaintiff to notify her that it would be her last day working for him. (*See* LM's SMF ¶ 76; P's Resp. ¶ 76). Whether the date of accrual was in January 2006, September 2006, or sometime between those dates, it passed before June 30, 2007, the latest date Plaintiff

---

[27] The undersigned recognizes that the Court should use state law to determine whether a statute of limitations should be tolled. *See Moore*, 267 F.3d at 1217. However, the equitable modification to the accrual rule remains part of the federal law involving accrual; a number of Eleventh Circuit cases have cited to this rule when discussing accrual, including most recently the decision in *Cooper*, 390 F.3d at 734. Thus, federal law controls the issue of equity and accrual.

AO 72A
(Rev.8/8
2)

could have brought a timely failure-to-hire claim.  Thus, to the extent that Plaintiff's § 1981 claim rests on Defendants' failure to hire her, it is due to be dismissed for failure to file the claim within the limitations period.

Conversely, to the extent that Plaintiff raises her claim as a retaliatory-termination claim, it is not barred by a limitations period.  Plaintiff learned that her job was ending on September 22, 2006.  (LM's SMF ¶ 76; P's Resp. ¶ 76). This accrual date falls well after June 30, 2005, and thus, construed as a retaliatory-termination claim, Plaintiff's action is timely filed.

Accordingly, the undersigned **RECOMMENDS** to the District Court that, in the event it does not grant Defendants' motions for summary judgment on Plaintiff's § 1981 claims on other grounds, it **GRANT** summary judgment on those claims on timeliness grounds, to the extent the claims rely on a "failure-to-hire" theory. Conversely, the undersigned **RECOMMENDS** to the District Court that it **DENY** the motions with respect to timeliness regarding any retaliatory-termination claims.

### 3.    *Exhaustion of Administrative Remedies*

Under both the ADA and Title VII, a plaintiff must exhaust her administrative remedies prior to filing a civil action.  *See Rizo v. Ala. Dep't of Human Res.*, 228 Fed. Appx. 832, 835-36 (11th Cir. Jan. 31, 2007) ("In order to litigate a claim for

47

discrimination under Title VII [or] the ADA . . . a plaintiff must first exhaust [her] administrative remedies, beginning with the filing of a charge of discrimination with the EEOC."). The exhaustion requirements for Title VII and the ADA are the same. *See* 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII to the ADA).

The purpose of the exhaustion requirement is to allow the EEOC to have the first opportunity to investigate allegations of discrimination and carry out its role "in obtaining voluntary compliance and promoting conciliation efforts." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (internal punctuation omitted). As a result, both Title VII and the ADA prohibit a plaintiff from alleging new acts of discrimination in the judicial complaint that were not raised in the EEOC charge. *Id.* at 1279-80. A plaintiff may bring, however, claims that "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint. *Id.* at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)). In other words, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Gregory*, 355 F.3d at 1280. "Courts are nonetheless 'extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],'" such that the EEOC charge is not to be "strictly interpreted." *Id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61, 465

48

(5th Cir. 1970)).  Accordingly, "the proper inquiry" is whether Plaintiff's "complaint

was like or related to, or grew out of, the allegations contained in her EEOC charge."

*See Gregory*, 355 F.3d at 1280.

***a.*      *Exhaustion of Administrative Remedies for Plaintiff's ADA Claim***

The ADA prohibits an employer from "discriminat[ing] against any individual

because such individual has opposed any act or practice made unlawful by this chapter

or because such individual has made a charge, testified, assisted, or participated in any

manner in an investigation, proceeding, or hearing under this chapter."

42 U.S.C. § 12203(a).  In her First Claim for Relief, Plaintiff brings an ADA retaliation

claim against Lockheed on the basis that she suffered adverse actions for "assisting and

participating in investigations, proceedings, or hearings and aid[ing] or encourag[ing]

individuals in the exercise or enjoyment of rights" under the ADA.  [Doc. 2 ¶ 26].

Plaintiff's Charge of Discrimination does not reference the ADA, nor does it

include any allegation that discrimination based on disability gives rise to her claims.

(*See* Pl.'s Dep., Ex. 29).  In the section of the charge form in which the claimant is to

check the appropriate box to indicate the basis of the discrimination, Plaintiff also left

the "Disability" box unchecked.  (*Id.*).  In its motion for partial judgment on the

49

pleadings, Lockheed argued that, as a consequence, Plaintiff's ADA retaliation claim should be dismissed because she failed to exhaust her administrative remedies by bringing the claim before the EEOC. [Doc. 31-1 at 6]. In the R&R on the motion, the undersigned concluded that dismissal was inappropriate because it was unclear at that stage of the proceedings whether Plaintiff's EEOC charge inherently encompassed an ADA retaliation claim.[28] [Doc. 55 at 23]. The undersigned then noted that it would be necessary to review evidence of the subject matter of the EEOC investigation before the Court could determine whether Plaintiff had exhausted the administrative remedies available on her ADA claim. [*Id.*]. Lockheed now renews the exhaustion argument in its motion for summary judgment. [Doc. 177-1 at 18].

"The actual investigation triggered by the EEOC charge [is] the primary factor determining the permissible scope of a judicial complaint of employment discrimination." *Dowlatpanah v. Wellstar Douglas Hosp.*, No. 1:05-cv-2752-WSD-RGV, 2006 WL 4093123, at *12 (N.D. Ga. Dec. 5, 2006)

---

[28]     The charge indicates that Plaintiff experienced retaliation after she served as a witness for another employee's EEOC discrimination charge and after she objected to Lockheed's allegedly discriminatory practices relating to employees' applications for FMLA benefits. (*See* Pl.'s Dep., Ex. 29). The undersigned noted that it was possible that the other employee's charge could have led Plaintiff to provide information regarding a disability claim and that the applications for FMLA leave had the potential to overlap with ADA claims. [Doc. 55 at 23-24].

50

(Vineyard, M.J.). In its motion for summary judgment on the ADA claim, Lockheed asserts that "nowhere in its 150 page investigative file did the [EEOC] mention an ADA retaliation claim," but rather, that the EEOC "made clear that throughout its investigation that it was investigating a *Title VII* retaliation claim." [Doc. 177-1 at 19-20]. Lockheed contends that as a consequence, "Plaintiff cannot satisfy her burden to show 'that the EEOC actually did investigate' an ADA retaliation claim." [*Id.* at 20 (quoting *Thrasher v. Vertex Aerospace, LLC*, No. 3:03CV437/RV, 2005 WL 2044943, at *5 n.7 (N.D. Fla. Aug. 23, 2005)]. Plaintiff, in response, does not proffer any evidence showing that the EEOC investigated an ADA retaliation claim. [*See* Doc. 186 at 27-31]. In fact, she admits that "[t]he EEOC's investigative documents contain no reference to an ADA retaliation claim." (LM's SMF ¶ 106; P's Resp. ¶ 106). Instead, she argues that her charge should be construed liberally and that because the charge alleged discriminatory practices relating to the FMLA, which protects employees with "serious medical needs," "Lockheed had sufficient notice that [Plaintiff] was alleging retaliation for engaging in protected conduct opposing Lockheed's discriminatory practices against employees with disabilities." [*Id.* at 30-31].

51

Plaintiff does not provide any authority to support her assertion that "serious medical needs" under the FMLA are synonymous with "disabilities" under the ADA. [*See* Doc. 186 at 27-33]. Lockheed, however, cites several cases indicating that the terms are not synonymous. [*See* Doc. 196 at 17-18 (citing *Hurlbert v. St. Mary's Health Care Sys., Inc*., 439 F.3d 1286, 1295 (11th Cir. 2006) ("ADA's 'disability' and FMLA's 'serious health condition' are different concepts and must be analyzed separately.") (quoting 29 C.F.R. § 825.702(b)); *Johnson v. Ga. Television Co.*, 435 F. Supp. 2d 1237, 1241 n.8 (N.D. Ga. 2006) (Duffey, J.) (holding that the plaintiff "cannot use the FMLA as a vehicle to seek damages for . . . a claim for disability discrimination"); *Vincent v. Wells Fargo Guard Servs., Inc*., 3 F. Supp. 2d 1405, 1420 (S.D. Fla. 1998) (holding that an "attempt to read ADA elements into the FMLA would violate the spirit and purpose of the FMLA"). The undersigned's own research has also revealed cases that deem charges under the FMLA distinct from those alleged under the ADA. *See Kosakow v. New Rochelle Radiology Assocs.*, 274 F.3d 706, 736 (2d Cir. 2001) (declining to estop a plaintiff from bringing an FMLA claim despite her earlier unsuccessful claim under the ADA); *Vazquez Vazquez v. Checkpoint Sys. of Puerto Rico, Inc*., 609 F. Supp. 2d 217, 222 (D.P.R. 2009) (plaintiff's filing of charge under ADA did not toll the statute of limitations on the plaintiff's unasserted FMLA claims);

52

*Peter v. Lincoln Technical Inst.*, 255 F. Supp. 2d 417, 426-29 (E.D. Pa. 2002) (plaintiff's filing of charge under FMLA did not equitably toll the limitations period for an unasserted ADA claim); *Zankel v. Temple Univ.*, Civil Action No. 05-2760, 2006 WL 1083600, at *7 (E.D. Pa. Apr. 24, 2006) (plaintiff's filing of charge under ADA did not toll the statute of limitations on the plaintiff's unasserted FMLA claims); *see also Watkins v. Henderson*, No. IP99-1945-C-B/S, 2001 WL 219807, at *19 (S.D. Ind. Mar. 5, 2001) ("The FMLA does not protect an employee from retaliation for an activity statutorily protected by another statute, only from retaliation from an activity protected by the FMLA itself."). Admittedly, none of these cases are directly on point, but they do reinforce the undersigned's impression that, contrary to Plaintiff's argument, a simple allegation of an FMLA violation does not "clearly state[] the elements for . . . a cause of action under the ADA." [*See* Doc. 186 at 33].

Thus, because Plaintiff's Charge of Discrimination does not reference the ADA, and the scope of the EEOC's investigation of Plaintiff's Charge of Discrimination did not encompass an ADA retaliation claim, the undersigned **RECOMMENDS** to the District Court that, in the event it does not grant Lockheed's motion for summary judgment on Plaintiff's ADA claim on other grounds, it **GRANT** summary judgment on the claim for failure to exhaust administrative remedies.

53

       *b.*     *Exhaustion of Administrative Remedies for Plaintiff's Title VII Failure-to-Hire Claim*

Lockheed also argues that Plaintiff's Title VII failure-to-hire claim should be dismissed for want of exhaustion of administrative remedies.  [Doc. 177-1 at 21]. Lockheed contends that Plaintiff limited her charge to a claim that Lockheed terminated her in violation of Title VII and that the charge did not include a failure-to-hire claim. [*Id.*].  It further argues that Plaintiff specifically alleged that the earliest date of discrimination was not until July 31, 2006, which is six months later than Lockheed claims that Plaintiff's failure-to-hire claim accrued.  [*Id.*].  Plaintiff, in turn, points out that although neither her EEOC charge nor the EEOC intake questionnaire she completed includes the phrase "refusal to hire," the intake questionnaire does describe Wood's representations that Plaintiff would become a "permanent employee." [Doc. 186 at 33 (referencing Doc. 186-25 at 2)].  In reply, Lockheed admits that although Plaintiff did allege in the questionnaire that Wood told her that " 'becoming a permanent employee depended upon' her improving her performance, she did not claim that Dr. Wood failed to make her an employee–or that any such failure was based on her race," allegations necessary to substantiate her failure-to-hire claim.  [Doc. 196 at 19-20 & n.15].

54

The undersigned finds lacking Lockheed's argument that Plaintiff's Charge of Discrimination did not include a failure-to-hire claim.  As Plaintiff points out, under Title VII, an EEOC intake questionnaire may constitute an EEOC charge. [Doc. 186 at 31 (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320-21 (11th Cir. 2001)].  Lockheed does not contend that the Court may not consider the intake questionnaire in this case.  [*See* Doc. 196 at 19-20 & n. 15].  The undersigned has carefully reviewed the questionnaire and finds that Plaintiff's statements that Wood told her on June 13, 2006, that "becoming 'a permanent employee depended upon me changing,' " (Pl.'s Dep., Ex. 17 at 2), and that when Wood called to end Plaintiff's employment, "he said he had not 'seen any changes,' " (*id.* at 3), are sufficient to indicate to a reasonable EEOC investigator that Plaintiff intended to charge that Wood had failed to make her a permanent employee, and she therefore intended to bring a failure-to-hire claim.  Thus, the undersigned concludes that Plaintiff's failure-to-hire claim is sufficiently alleged in her EEOC charge.

The undersigned is also unconvinced by Lockheed's argument that the activity underlying the failure-to-hire claim would necessarily have occurred outside the time-period covered by the EEOC charge.  In insisting that Plaintiff's failure-to-hire claim accrued in January 2006, the month that Wood initially promised Lockheed

55

would make Plaintiff a permanent employee, Lockheed overreaches.  The evidence Lockheed proffers in support of the assertion shows only that Wood told Plaintiff he expected to make her permanent in January 2006, not that Wood ultimately failed to hire her that month.  [Doc. 196 at 20 (citing Pl.'s Dep. at 29, 55-56, 59, 74, 217, 484-85)].  Indeed, a passage of Plaintiff's deposition that Lockheed cites includes testimony stating that at least as late as March 2006, Wood was still telling Plaintiff that she would become a permanent Lockheed employee. (Pl.'s Dep. at 484-85).  Lockheed has not pointed to any evidence that would lead the undersigned to conclude that a reasonable jury could not find that the date Plaintiff knew or should have known she would not be hired as a permanent Lockheed employee was as late as September 22, 2006, the day Wood told her not to come back to work.  Thus, Lockheed's argument that Plaintiff's failure-to-hire claim necessarily accrued outside the scope of EEOC charge is unavailing.

For these reasons, the undersigned **RECOMMENDS** to the District Court that it **DENY** summary judgment on Plaintiff's Title VII failure-to-hire claim on exhaustion grounds.

56

### C.     Claims

Because of the similarities in the analyses, the undersigned will first address the motions for summary judgment on the racial harassment and disparate-treatment claims Plaintiff brings pursuant to Title VII and 42 U.S.C. § 1981 and then will consider the retaliation claims Plaintiff brings pursuant to Title VII, § 1981, the ADA, and the FMLA.

### 1.     Disparate-Treatment and Harassment Claims

Plaintiff alleges that she suffered disparate treatment and harassment because of her race.  (Compl. [Doc. 2]  ¶¶ 1, 35-38, 44-48).  Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C.  § 2000e-2(a)(1).  Race-based disparate-treatment discrimination and hostile-work-environment claims are also actionable under 42 U.S.C. § 1981. *See Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) (discrimination); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (hostile work environment).  The elements required to establish the claims are the same under both statutes, and the analytical framework is also identical.  *See Edwards*, 602 F.3d at 1300 (hostile work environment); *Richardson v.*

57

*Ala. Pine Pulp Co., Inc.*, 277 Fed. Appx. 907, 908 n.1 (11th Cir. May 13, 2008) (discrimination claims) (citing *Howard v. BP Oil Co.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994)).

### a.     Disparate Treatment Under Title VII and § 1981

To establish a *prima facie* case of racial discrimination, a plaintiff must show that: (1) she was a member of a protected group; (2) she was qualified for the position at issue; (3) she suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected group were treated more favorably. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002). Where, as here, there is no direct evidence of disparate treatment, the *McDonnell-Douglas* burden-shifting scheme applies. *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1060 (11th Cir. 1994) (noting that the analytical framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), applies to both Title VII and § 1981 claims). "After the plaintiff proves a prima facie case of discrimination, the defendant need only to produce evidence that there is a legitimate, non-discriminatory reason for the challenged employment action." *Kelliher*, 313 F.3d at 1275. If the employer thus rebuts the presumption of discrimination, it is entitled to summary judgment "unless the plaintiff

58

proffers evidence sufficient to create a genuine issue of material fact that discrimination was actually the reason for the challenged action." *Id.*

In the complaint, Plaintiff simply avers that she is an African-American woman and alleges that Defendants discriminated against her "because of her race." [Doc. 2 at 2, 5, 8, 10]. Within the counts alleging race-based discrimination, Plaintiff generally states that Defendants' actions "had an adverse effect on [her] benefits, privileges, terms and conditions employment and caused [her] to suffer damages." [*Id.* ¶¶ 37 (Count 3), 46-47 (Count 5)]. She does not specify the actions of which she complains, but instead states that she "incorporates by reference" the allegations set forth in the paragraphs preceding each of the counts. [*See id.* ¶¶ 35, 44].

Both defendants contend that they are entitled to summary judgment on Plaintiff's disparate-treatment claims because Plaintiff cannot point to a similarly situated non-African-American employee who was treated more favorably, and therefore, Plaintiff cannot make out a *prima facie* case of race discrimination. [Doc. 177-1 at 24-25; Doc. 178-1 at 17-20]. Wood also argues that Plaintiff cannot show that her performance was satisfactory and that she was therefore qualified for the FMLA Coordinator position. [Doc. 178-1 at 17-18].

59

Defendants then argue that even if Plaintiff could establish a *prima facie* case of disparate treatment, her claims could not survive the *McDonnell-Douglas* burden-shifting analysis.     [Doc. 177-1 at 25-29; Doc. 178-1 at 21, 32-34].   They presume that Plaintiff's race-discrimination claims stem from Defendants' decision to terminate Plaintiff in September 2006 and possibly from Defendants' failure to include her and several other African-American employees in an ethics training session. [Doc. 177-1 at 25-29; Doc. 178-1 at 21, 32-34].   They argue that even if Plaintiff were able to establish a *prima facie* case, she cannot overcome Defendants' nondiscriminatory, business-related reasons for these actions:   fewer than all of the medical-unit employees were invited to ethics training because it was impossible to train all of the medical-unit employees at one time, and Wood decided to end Plaintiff's employment because he had a good-faith belief that her work performance was unsatisfactory.   [Doc. 177-1 at 27; Doc. 178-1 at 17-18, 21-22].

Plaintiff does not address her disparate-treatment claims in either of the briefs she filed in opposition to Defendants' motions for summary judgment. [*See* Docs. 185, 186].   She does, however, argue in a surreply that the Court should adopt the facts and analysis appearing in *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), and accordingly find that sufficient circumstantial

60

evidence exists to preclude summary judgment on the issue of Lockheed's discriminatory intent.[29]  [*See* Doc. 212 at 4-5].  As Plaintiff argues, *Smith* holds that a similarly situated comparator "is not . . . the *sine qua non* for a plaintiff to survive a summary judgment motion in a discrimination case," and that a "plaintiff will always survive summary judgment if [s]he presents circumstantial evidence that creates a

---

[29]      Because the Eleventh Circuit entered the *Smith* opinion after Plaintiff filed her briefs in response to Defendants' motions for summary judgment, the Court granted Plaintiff leave to file the surreply.  [Doc. 203 at 3-4].

61

triable issue concerning the employer's discriminatory intent."[30]   [*Id*. at 2 (quoting

*Smith*, 644 F.3d at 1328)].

Why the facts set out in the *Smith* case should apply to the instant case is unclear.

The authority upon which Plaintiff relies in stating that the Court may adopt

them–*Travers v. Jones*, 323 F.3d 1294 (11th Cir. 2003)–holds that federal courts must

accept facts as true "[w]hen a state agency, acting in a judicial capacity, resolves

disputed issues of fact properly before it that the parties have had an adequate

opportunity to litigate . . . ." *Travers*, 323 F.3d at 1296 (applying Georgia law).  It does

---

[30]      The undersigned notes that had Plaintiff not abandoned any argument regarding a similarly situated comparator, it is unlikely she would have succeeded.  The undisputed facts show that (1) Lockheed never hired another FMLA Coordinator employee after Lundy, (LM's SMF ¶ 88; P's Resp. ¶ 88); (2) another African-American woman was hired to fill Plaintiff's former FMLA Coordinator contractor position, (LM's SMF ¶¶ 83-86; P's Resp. ¶¶ 83-86); and (3) the other contractor who was hired as a permanent Lockheed employee in the medical unit was, unlike Plaintiff, a medical doctor and therefore not similarly situated to Plaintiff, (P's SMF (LM) ¶ 47; LM's Resp. ¶ 47); *see Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007) (In determining whether employees are similarly situated, the Eleventh Circuit has held that employees "must be similarly situated in all relevant respects.") (emphasis and internal punctuation omitted); *see also Rioux v. City of Atlanta*, 520 F.3d 1269, 1280-81 (11th Cir. 2008) (Material differences in "ranks and responsibilities" may render any comparison impossible without "confusing apples with oranges.").  Thus, it appears that even if Plaintiff had attempted to defend her disparate-treatment claims within the traditional Title VII framework that she would have failed to show a similarly situated comparator outside her protected group who was treated more favorably than she was, and thus, she would not have been able to establish a *prima facie* case of discrimination.

not appear that any of the facts in *Smith* were litigated before a state agency acting in a judicial capacity, and thus, it appears that the holding does not apply here. Eleventh Circuit precedent also holds that factual findings made in a separate case by another court are inadmissible hearsay and may not be judicially noticed or admitted under the public-records exception. *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1287 (11th Cir. 2001) (citing *United States v. Jones*, 29 F.3d 1549, 1554 (11th Cir. 1994)); *see also* Fed. R. Evid. 201, 803(8)(C)); *Nipper v. Snipes*, 7 F.3d 415, 417-18 (4th Cir. 1993).

Even assuming that the *Travers* holding applies by analogy, that Lockheed had an adequate opportunity to litigate the facts in the *Smith* case, and that the Court could properly adopt them here, *Smith*'s facts are of dubious value to Plaintiff's case. The plaintiff in *Smith* was a white Lockheed supervisor who was fired for forwarding a racially charged e-mail. *Smith*, 644 F.3d at 1324. Although the evidence showed that African-American employees had received lesser punishment for similar prohibited activity, the district court found that because the African-American employees were non-supervisors–and presumably, it was reasonable for Lockheed to hold the non-supervisors less accountable for violations of company policy–the plaintiff lacked the ability to show a similarly situated comparator who had been treated more favorably. *Id*. at 1326. Therefore, the district court determined, the *Smith* plaintiff's

63

claim for disparate treatment could not go forward. *Id*. at 1326-27. In considering

Smith's appeal, the Eleventh Circuit recited copious evidence indicating that Lockheed

was under heavy media scrutiny for allegedly favoring white employees over black

employees and, as a result, faced the threat of loss of major government contracts. *Id*.

at 1329-31, 1334-38. In light of this evidence, the Eleventh Circuit found that, despite

the lack of direct comparators, the circumstances established "a convincing mosaic of

circumstantial evidence" from which a jury could infer that Lockheed, and particularly

Tom Heiserman, Vice President of Human Resources, had motivation to enforce

workplace-conduct rules in an unlawfully race-conscious fashion–to the detriment of

*white* employees. *Id*. at 1328-29, 1341.

Plaintiff points out that Heiserman was still Lockheed's Vice President of Human

Resources during the time-period relevant to this matter. [Doc. 212 at 2-3 & n.1].

Plaintiff does not explain how this fact or any of the facts set forth in *Smith*–were they

admissible–support Plaintiff's argument that her employment was terminated because

she is African-American or because she opposed discriminatory conduct allegedly

committed against African-American employees. [*See* Doc. 212, *passim*]. It is

undisputed that Wood was the sole decisionmaker in Plaintiff's case, (LM's SMF ¶ 75,

Pl.'s Resp. ¶ 75), and, even if Heiserman did hold racial biases, there has never been

64

any allegation that Heiserman had anything to do with the decision to end Plaintiff's employment, [Doc. 160 at 4-5]. Thus, regardless of whether the Court considers the facts recited in *Smith*, Plaintiff's proffer still fails to show proof of discriminatory intent sufficient to survive summary judgment. *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 341 (11th Cir. 1995) (A "plaintiff must present specific nonconclusory facts that would support a jury verdict against the particular defendant on discriminatory intent.").

Plaintiff further argues in her surreply that she "has presented a substantial body of circumstantial evidence supporting her assertions that she was a target of discrimination and punished for opposing discrimination" and that "[b]ased on the totality of the circumstances, . . . the record contains sufficient circumstantial evidence from which a jury could infer that Lockheed displayed a racially discriminatory animus toward [Plaintiff]." [Doc. 212 at 5]. She does not explain what that evidence is, but instead, generally references seventy-seven paragraphs of the declaration she filed in support of her briefs opposing Defendants' motions for summary judgment. [*Id*. at 5 (citing Doc. 185-2 ¶¶ 45-49, 52-53, 67-69, 71-77, 93-94, 97-100, 117-29; Doc. 186-3 ¶¶ 45-49, 52-53, 67-69, 71-72, 94-97, 99, 104-07, 113-22)]. This falls far short of presenting specific nonconclusory facts sufficient to survive summary judgment. *See Ratliff*, 62 F.3d at 341. The undersigned further notes that a significant

65

number of the statements Plaintiff cites lack foundation, are based on hearsay, or are not presented in Plaintiff's statements of material fact, and therefore are not properly before the Court.   Despite these deficiencies, the undersigned has reviewed the statements and fails to comprehend how, even if the statements were properly before the Court, they support Plaintiff's assertion that Wood or Lockheed harbored racial animus toward Plaintiff.   Thus, the undersigned finds that Plaintiff has failed to establish a *prima facie* case of disparate treatment.[31]

Accordingly, should the District Court choose not to grant Defendants' motions for summary judgment on Plaintiff's Title VII and § 1981 disparate-treatment claims (Counts 3 and 5) on other grounds, the undersigned alternatively **RECOMMENDS** that the motions for summary judgment on these claims be **GRANTED** based on Plaintiff's failure to make out a *prima facie* case of disparate treatment.[32]

_____

[31]   The undersigned notes that Plaintiff's disparate treatment claim is alternatively subject to summary judgment because Plaintiff failed to respond to Wood's argument that she failed to show that she was qualified for an FMLA Coordinator employee position.  [*See* Doc. 178-1 at 17-18; Doc. 185, *passim*]; *see also Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002) (affirming grant of summary judgment on a wrongful termination claim, in part, because the plaintiff "failed to present any evidence that she was performing satisfactorily").

[32]   Should the District Court find instead that Plaintiff has sufficiently presented a *prima facie* case of discrimination, the undersigned refers it to the analysis of the alleged adverse employment actions, Defendants' nondiscriminatory,

### b.      *Racial-Harassment Claims Under 42 U.S.C. § 1981*

To establish a claim for hostile-work-environment racial harassment, a plaintiff must show that (1) she belonged to the protected group at issue; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her race; and (4) "the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) there is a basis for holding the employer liable. *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009).   In her complaint, Plaintiff states that Defendants undertook discriminatory actions that were "substantially motivated by [Plaintiff's] race" and that they "created a racially hostile environment in violation of 42 U.S.C. § 1981." [Doc. 2 ¶ 36].  She does not elaborate on the nature of Defendants' actions or their effect, except to state generally that they "had an adverse effect on [her] benefits, privileges, terms and conditions employment and caused [her] to suffer damages." [*Id.* ¶ 37].

Both defendants argue that they are entitled to summary judgment on Plaintiff's racial-harassment claims.  [Doc. 177-1 at 39-44; Doc. 178-1 at 20-25].  Specifically,

---

business-related reasons for their adverse actions, and Plaintiff's pretext argument, below. *See infra* §§ III.C.2.a., c.

67

Defendants argue that nothing rising to the level of "severe or pervasive" harassment has taken place, and that any activity that did take place was not motivated by race. [Doc. 177-1 at 39-42; Doc. 178-1 at 25]. Lockheed further argues that Plaintiff cannot show any basis for employer liability because there is no evidence that Plaintiff used Lockheed's reporting procedure to alert it to the alleged harassment. [Doc. 177-1 at 42-43].

Plaintiff does not argue in either of the briefs she filed in opposition to Defendants' motions for summary judgment that she suffered harassment because of her race.[33] [*See* Docs. 185, 186]. Thus, Plaintiff has abandoned the claims by failing to respond to Defendants' arguments. *See Denney v. City of Albany*, 247 F.3d 1172, 1182 (11th Cir. 2001); *Welch v. Delta Air Lines, Inc.*, 978 F. Supp. 1133, 1140 (N.D. Ga. 1997) (Hull, J.) (concluding that the plaintiff abandoned claims by failing to address them in his brief in opposition to summary judgment).

Consequently, should the District Court choose not to grant Defendants' motions for summary judgment on Plaintiff's § 1981 racial-harassment claims (Count 3) on

---

[33] Plaintiff instead argues that Defendants harassed her in retaliation for her opposition to conduct she believed was unlawful discrimination. [*See* Doc. 185 at 2, 12-14, 17, 25, 27, 29, 31; Doc. 186 at 14-16, 34, 36-37, 42-44].

other grounds, the undersigned alternatively **RECOMMENDS** that the motions for summary judgment on these claims be **GRANTED** on grounds of abandonment.

### 2. Retaliation

Plaintiff brings retaliation claims under Title VII, § 1981, the ADA, and the FMLA. [Doc. 2 ¶¶ 24-34, 39-43, 49-53]. Title VII makes it unlawful for an employer to retaliate against an employee because she opposed an unlawful employment practice or because she made a charge, testified, assisted, or participated in any manner in a Title VII investigation, proceeding or hearing. 42 U.S.C. § 2000e-3(a). Similar causes of action proscribe retaliation against an employee because she opposed unlawful employment practices or because she made a charge, testified, assisted or otherwise participated in an investigation, proceeding, or hearing under § 1981, *see Goldsmith v. Bagby Elevator Co., Inc.* 513 F.3d 1261, 1277 (11th Cir. 2008); the ADA, *see Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998); or the FMLA, *see Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 798 (11th Cir. 2000).

Absent direct evidence of discriminatory intent, the *McDonnell-Douglas* burden-shifting framework applies to the analysis of a retaliation claim brought under any of the aforementioned causes of action. *See Goldsmith*, 513 F.3d at 1277 (Title VII and § 1981); *Standard*, 161 F.3d at 1328 (ADA retaliation claims are assessed under

AO 72A
(Rev.8/8
2)

the same framework employed for Title VII retaliation claims); *Martin v. Brevard Cnty. Public Schs.*, 543 F.3d 1261, 1268 (FMLA).  The plaintiff must show that (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) the activity and adverse event were causally related.  *See Goldsmith*, 513 F.3d at 1277 (Title VII and § 1981); *Standard*, 161 F.3d at 1328 (ADA); *Brungart*, 231 F.3d at 798 (FMLA).  To satisfy the first element, a plaintiff need not prove the underlying claim of discrimination that led to her protected activity; it is sufficient if she had "a reasonable good faith belief that the discrimination existed."  *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997); *see also Standard*, 161 F.3d at 1328 ("[I]t is sufficient that an employee have a good faith, objectively reasonable belief that [her] activity is protected by the statute.").  As for the second element, a materially adverse action is one that " 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' "  *Reeves v. DSI   Sec. Servs., Inc.*, 395 Fed. Appx. 544, 547 (11th Cir. Aug. 31, 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  " '[P]etty slights, minor annoyances, and simple lack of good manners' generally do not rise to the level of materially adverse actions."  *Reeves*, 395 Fed. Appx at 547 (quoting *Burlington*, 548 U.S. at 68).  To satisfy the third prong, a plaintiff is only required to show that the "protected activity

70

and the adverse action were not wholly unrelated." *Shotz v. City of Plantation*, 344 F.3d 1161, 1180, n.30 (11th Cir. 2003) ("[A] plaintiff satisfies this element if [s]he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse action.") (alteration and citation omitted); *see also Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1997) (finding that one month between protected activity and adverse action supports finding of causation); *Jones v. Flying J, Inc.*, 409 Fed. Appx. 290, 294 (11th Cir. Jan. 19, 2011) (noting that the decision-maker's awareness may be established by circumstantial evidence) (citing *Brungart*, 231 F.3d at 799; *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1197 (11th Cir. 1997)). After a plaintiff satisfies his *prima facie* case, if the employer offers a legitimate, non-discriminatory reason for the adverse action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. *Holifield*, 115 F.3d at 1566.

Except for protected activity related to racial discrimination, which is covered by both Title VII and § 1981, protected activity will, of course, vary by statute. Plaintiff alleges the same retaliatory conduct, however, regardless of the protected activities that allegedly provoked the retaliation. [*See* Docs. 2, 185, 186, *passim*].

71

Consequently, the undersigned will first consider which of the alleged actions rises to the level of a "materially adverse action."   The undersigned will then determine whether Plaintiff has shown that she engaged in statutorily protected activity and that the activity is causally related to a materially adverse action, thus enabling Plaintiff's *prima facie* retaliation claims to survive Defendants' summary-judgment challenges. When the *prima facie* analyses are complete, the undersigned will then consider Defendants' proffered reasons for the allegedly retaliatory conduct and whether Plaintiff has offered evidence sufficient to allow a jury to find that those reasons are pretextual.

### *a.    Retaliatory Conduct*

In the complaint, Plaintiff avers that in retaliation for her engagement in statutorily protected activity, "Defendants engaged in retaliation, interference, coercion and intimidation," [Doc. 2 ¶ 26], "took adverse action against [her]," [*id.* ¶¶ 31, 40], "deprived [her] of equal benefits, privileges, terms and conditions of employment . . . and caused [her] to suffer damages," [*id.* ¶¶ 27-28, 32-33, 41, 46, 50-51]. She also states that the retaliatory activity includes her termination.  [*Id.* ¶ 50].

Defendants do not dispute that termination or failure-to-hire are adverse employment actions.  [*See* Doc. 177-1, 178-1, *passim*]. Lockheed does argue, however,

72

that "a few isolated incidents over the period of a year (such as not being invited to a training on one occasion, and being ignored), . . . considered together, are far from objectively severe" and therefore do not constitute materially adverse activity. [Doc. 177-1 at 41-42]. Plaintiff, in response, states that starting in mid-June 2006, "Wood began to ignore [her] requests for information that she needed to perform her duties as FMLA Coordinator, and treated her in a demeaning manner in front of her co-workers in a manner that was humiliating to her." [Doc. 185 at 12-13, 27]. She also states that "Isley was openly hostile to her," [*id*. at 13], and "[t]he hostility, harassment and interference [Plaintiff] experienced from Kathy Isley and Dr. Wood when she had questions about FMLA coding continued until she was terminated," [*id*. at 13, 27]. She further states that "Wood additionally harassed and discriminated against [Plaintiff] by interfering with her work and opposing her attempts to assist Black employees . . . obtain FMLA benefits accorded White employees when they presented valid documentation of eligibility according to the U.S. Department of Labor handbook," and that "Wood's interference caused her extreme humiliation and distress on a regular basis." [*Id*. at 13; *see also id.* at 27 (stating that "Dr. Wood and Kathy

73

Isley routinely interfered with [Plaintiff's] work and made decisions regarding FMLA that contradicted their prior instructions to her and the law.")].[34]

In determining that an adverse action must be evaluated in terms of whether it would dissuade a "reasonable employee" from participating in protected activity, the United States Supreme Court reasoned that such an objective standard is both "judicially administrable" and "avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68-69.  Consequently, when evaluating whether an allegedly retaliatory activity amounts to a materially adverse action, courts must objectively evaluate the particular circumstances of the case in order to determine whether the defendants' actions would deter a reasonable employee from engaging in protected activity.  *Id*. at 69.

Plaintiff's allegations, aside from her allegations of termination or failure-to-hire, are insufficient to enable the undersigned to conclude that a reasonable jury could find that Defendants took part in materially adverse activity.  First, "[s]nubbing by supervisors and co-workers" and general "antipathy" have been held not to be

_____

[34]    Plaintiff makes nearly identical allegations in her response to Lockheed's motion for summary judgment.  [*See* Doc. 186 at 15-16, 34, 42-43].

74

actionable retaliatory activities. *Id*. at 68.  Second, Plaintiff describes the severity and pervasiveness of the activity solely in subjective terms: rather than describe what specific events took place and when, Plaintiff instead generally refers to harassment, hostility, and interference, and states that the activity "regularly" made *her* feel distressed and humiliated.[35] [Doc. 185 at 12-13, 27; Doc. 186 at 15-16, 34, 42-43]. *Cf. Mendoza v. Borden, Inc*., 195 F.3d 1238, 1249 (11th Cir. 1999) (concluding that general allegations of "constant" following and staring were insufficient to create a jury issue with regard to frequency of harassing conduct).  Without more, neither the undersigned, nor any other reasonable factfinder, could objectively conclude that the activity Plaintiff describes would deter a reasonable employee from engaging in protected conduct.

Therefore, should the District Court decline to grant summary judgment on Plaintiff's retaliation claims on the aforementioned grounds, the undersigned **RECOMMENDS** to the District Court that it **GRANT** summary judgment on all retaliation claims grounded by allegedly retaliatory conduct other than Plaintiff's

---

[35]    Although it is immaterial to the "reasonable employee" analysis, the undersigned also notes that according to Plaintiff's statements of material fact, none of the activity did dissuade Plaintiff from complaining to Wood and Isley about alleged FMLA discrimination "weekly," (P's SMF (LM) ¶ 84; LM's Resp. ¶ 84), and participating in interviews related to Lockheed employees' charges of discrimination, (P's SMF (LM) ¶¶ 173-75, 179-81; LM's Resp. ¶¶ 173-75, 179-81).

75

termination or Defendants' failure to hire her as a permanent Lockheed employee. Accordingly, when evaluating the causation element of Plaintiff's retaliation claims, the undersigned will consider only whether the protected conduct was causally related to Plaintiff's termination or Defendants' failure to hire her, and not whether her allegedly protected activity triggered any of the other conduct of which Plaintiff complains.

### b.   Prima Facie *Cases*

### i.   *ADA*

In Count 1 of the complaint, Plaintiff states that Defendants engaged in retaliation "because Plaintiff opposed acts or practices made unlawful by ADA, and because such Plaintiff assisted and participated in investigations, proceedings, or hearings and aided or encouraged individuals in the exercise or enjoyment of rights granted or protected by the ADA." [Doc. 2 ¶ 26]. Lockheed admits that Plaintiff engaged in protected activity under the ADA in July or August 2006 when she participated in Lockheed's investigation into Bond's EEOC charge. [Doc. 177-1 at 34]. It argues, however, that Plaintiff cannot make a *prima facie* case of disability discrimination because she cannot show a causal connection between the participation and her failure-to-hire or termination claim. *Id.* Specifically, Lockheed argues that

76

(1) Plaintiff's participation in Bond's investigation took place *after* Lockheed failed to hire her in January 2006 and therefore could not have triggered her failure-to-hire, and (2) Plaintiff offers no admissible proof that Wood knew of her participation at the time he ended her employment. *Id*.

Plaintiff, in response, states that Wood knew of her statutorily protected activity. [Doc. 186 at 35-36]. She contends that "[s]he notified her superior, Dr. Wood, and Michael Blakey, the Lockheed Equal Employment Opportunity investigator of the facts surrounding Lockheed's interference with Ms. Collins', Ms. Davis', Mr. Reece's, Mr. Bond's and Mr. Jones' federally protected rights and evidence that established that decisions regarding FMLA, ADA accommodation and other forms of leave, as well as work restrictions, were being applied in [sic] a racially discriminatory basis." [*Id*. at 36]. She further states that "she told Dr. Wood personally of her concerns, opposed his decisions in his presence and was told by Michael Blakey that Dr. Wood knew she was being interviewed in Mr. Bond's EEOC charge." [*Id*.]. Plaintiff does not include any citations to evidence or to her statements of material fact in support of these

77

statements,[36] [*see id.* at 35-36], but she does imply that Blakey's interview notes indicate that Wood was aware that Blakey had interviewed Plaintiff, [*see id.* at 38].

Although, by failing to cite record evidence, Plaintiff has arguably abandoned this claim as well, *see Denney*, 247 F.3d at 1182, the undersigned has reviewed her statements of material fact to determine whether she has presented a *prima facie* case of retaliation under the ADA. With regard to the claim that Defendants retaliated against her for opposing disability discrimination, Plaintiff states the following:

> Dr. Wood was aware of Ms. Perrymond's opposition to discriminatory treatment and retaliation directed toward Black employees Crystal Collins and Lashunda Davis beginning in October 2005, when they were first put of out work [sic] pending placement rather than being offered FMLA or ADA leave. Ms. Isley told her they would be fired. Dr. Wood was present when Ms. Isley made this statement. Kathy Isley and Dr. Wood acknowledged they knew Ms. Perrymond was concerned about the decision to put Ms. Collins and Ms. Davis out of work "pending placement," while they were pregnant rather than being offered FMLA or

---

[36] In her general recitation of the facts at the beginning of her brief opposing Lockheed's motion for summary judgment, Plaintiff cites her own declaration in support of her statement that she "reported her opposition to Lockheed's discrimination against Ms. Collins, Ms. Davis, Jeffrey "J.T." Bond, Henry Reese and Deon Jones to . . . Dr. Wood . . . during her employments at Lockheed." [Doc. 186 at 10 (citing Pl.'s Decl. [Doc. 186-3] ¶ 72)]. The evidence Plaintiff cites in support of the assertion, however, reflects Plaintiff's testimony that Wood knew Plaintiff was concerned about Collins or Davis but states that she told Blakey, not Wood, of her concerns regarding the other alleged victims of discrimination. (*See* Pl.'s Decl. [Doc. 186-3] ¶ 72). Thus, the undersigned considers the statement regarding Wood's knowledge only so far as it relates to Collins and Davis.

AO 72A
(Rev.8/8
2)

> ADA leave.  Dr. Wood managed the paperwork regarding Ms. Collins'
> and Ms. Davis' status and Ms. Perrymond heard him in regular
> conversation along with Kathy Isley and in house attorney Phyllis Hogue
> regarding the status of both pregnant women.  Ms. Perrymond observed
> Dr. Wood and Ms. Isley reviewing Ms. Collins' and Ms. Davis' records
> before going to meet with Ms. Hogue, Lockheed's in house counsel.
> Ms. Perrymond made her opposition to this decision known within the
> Medical Unit, after Dr. Wood determined that the two could not work,
> earn income or have health care including pre-natal benefits.  When
> Ms. Perrymond voiced my [sic] concerns about Ms. Collins' and
> Ms. Davis' ability to obtain prenatal care Ms. Isley said, in Dr. Wood's
> presence, "How can they afford to hire a lawyer if they're broke!"
> Dr. Wood did not object or voice any concern about Ms. Collins' or
> Ms. Davis' ability to obtain prenatal care after hearing these comments.
> Perrymond Decl. ¶¶ 71-73.

(P's Resp. W SMF ¶ 109 (text of ¶ 109 also repeated at ¶¶ 120, 121, 122, and 123)).

She also states that she pointed out to Lundy "disparities she observed in the manner in which Lockheed treated Black employees seeking . . . ADA accommodation."  (P's Resp. W SMF ¶ 59).  She further avers that she told someone named Mr. Crear[37] that she had opposed ADA discrimination, (P's Resp. W SMF ¶ 136), and that she stated in front of Lundy and a medical technician named Susan that she "would contact Mr. Bond and tell him to go to EEOC to report what she believed to be discrimination based on his race, Black, as well as his

---

[37]    Plaintiff does not explain in her statements of material fact who Mr. Crear is.  [*See* Doc. 185-1, 186-2, *passim*].

disability." (P's SMF (LM) ¶ 167). She also states that Blakey interviewed her regarding Bond's charge, and that Blakey told her that Wood knew about the interview. (P's SMF (LM) ¶¶ 171-72).

The undersigned has reviewed the statements and concludes that Plaintiff has failed to show even circumstantial evidence of a causal connection between the activity and any adverse action and thus cannot establish a *prima facie* case of retaliation under the ADA. Plaintiff's statements to Lundy, Crear, and Susan are of no effect here because there is no evidence that they had any influence over Plaintiff's working conditions; that they related Plaintiff's statements to Wood or anyone else who may have had control over Plaintiff's employment; or that it would have been typical for them to relay such information.

Plaintiff's statements to Blakey are also insufficient proof of causation. Even if Plaintiff did state her opposition to Blakey, she has not presented non-hearsay evidence that he reported her statements to anyone else at Lockheed, much less anyone who also may have had the power to fire Plaintiff, nor does she show that Lockheed protocol would have typically given Wood access to the information. Plaintiff's assertion that Blakey told Wood of her participation in EEOC interviews relies entirely on the truth of what she says Blakey told her and therefore is inadmissible hearsay. (*See* P's Resp.

W SMF ¶¶ 75, 134-35 ("Dr. Wood already was aware Mr. Blakey was contacting Ms. Perrymond regarding Jeffrey "J.T." Bond's charge of discrimination related to Mr. Bond's request for FMLA leave. Michael Blakey interviewed Ms. Perrymond in July 2006 to ask her about what happened with Mr. Bond. Dr. Wood and Kathy Isley knew he was interviewing Ms. Perrymond about Mr. Bond's allegations. Mr. Blakey confirmed he would interview Dr. Wood afterward. Perrymond Decl. ¶ 122."). Further, although Plaintiff strongly implies that Blakey's interview notes indicate that Wood knew of Plaintiff's participation in Bond's case, she does not offer them into evidence. [Doc. 186 at 38 (citing a court order to the EEOC to produce the notes, rather than the notes themselves)].

Finally, assuming that Plaintiff did tell Wood directly of her opposition to Lockheed's treatment of Collins and Davis and clearly alleged that she believed that Lockheed was discriminating against them in violation of the ADA, Plaintiff still fails to show causation between her activity and Lockheed's alleged retaliation. Plaintiff alleges that Wood learned of her opposition to Lockheed's treatment of Collins and Davis in October 2005. (P's Resp. W SMF ¶¶ 109, 120-123). Given that the last day of Plaintiff's employment was September 22, 2006, the alleged adverse employment action would have taken place eleven months after the protected activity. The Eleventh

Circuit has held that such a long temporal gap precludes a finding of causation. *See Wascura v. City of S. Miami*, 257 F.3d 1238, 1245 (11ᵗʰ Cir. 2001) (three-and-one-half-month gap too remote to prove causation through temporal proximity).[38]

Therefore, should the claim not be disposed of upon other grounds, the undersigned **RECOMMENDS** to the District Court that Lockheed's motion for summary judgment on Plaintiff's ADA retaliatory discrimination claim (Count 1) be **GRANTED** for failure to establish a *prima facie* case.

### ii. *Title VII Pregnancy Discrimination*

In Count 6, Plaintiff alleges that Lockheed retaliated against her because she engaged in activities protected under Title VII. [Doc. 2 ¶¶ 49-53]. She does not specify the facts upon which she bases her claims but instead states that she "incorporates by reference" the allegations set forth in the paragraphs preceding the count. [*See id*. ¶ 49]. Presumably, Plaintiff is alleging that Lockheed retaliated against her in violation of Title VII in response to her opposition to "policies and practices of

---

[38] Even were the Court to find that Plaintiff had a retaliatory failure-to-hire claim that accrued on July 31, 2006, the date stated in the Charge of Discrimination as the first date discrimination took place, (Pl.'s Dep., Ex. 29), the temporal gap would still be nine months and thus too long to establish temporal proximity. *Wascura*, 257 F.3d at 1245.

82

discrimination with regard to women and minority employees" who were employed at Lockheed's Marietta facility  [*Id*. at 2-3, 5].  In this section, the undersigned will examine the retaliation claim grounded in pregnancy-based discrimination, and in the next section, the undersigned will review the retaliation claims grounded in race-based discrimination.

Lockheed contends that Plaintiff cannot make out a *prima facie* case of retaliation with regard to pregnancy discrimination because Plaintiff's comments about Collins and Davis did not constitute protected activity and because she has failed to show causation. [Doc. 177-1 at 30-33].  Specifically, Defendants argue that Plaintiff's allegations amount to general allegations of "unfair treatment" such that they were insufficient to alert Wood that Plaintiff was complaining of discriminatory conduct that would violate Title VII, and that if the Court were to credit her allegations regarding opposition to pregnancy discrimination against Collins and Davis, the time-gap between her protected activity and her termination is too long to allow for a finding of causation. [Doc. 177-1 at 31-32].

Plaintiff's response hinges entirely on her activity related to the pregnancy discrimination she believes Lockheed committed against Collins and Davis.

83

[*See* Doc. 186 at 9-10[39] (linking pregnancy discrimination to Collins and Davis)].  She states that "Wood was aware of [Plaintiff's] opposition to discriminatory treatment" directed toward Collins and Davis "beginning in October 2005, and that '[s]he reported her opposition to Lockheed's discrimination against' Collins and Davis to Blakey 'during her employment at Lockheed.' "  [*Id*. at 10; *see also id.* at 16-17 (stating that sometime before July 2006, Plaintiff told Blakey about discrimination against Davis and Collins); *id*. at 35-36 (stating that she told Wood and Blakey about discrimination related to Davis's and Collins's requests for leave)].  Plaintiff also states that on June 13, 2006, Lockheed received "a threat of a suit and demand" regarding Collins's and Davis's claims.  [*Id*. at 15].  She also refers to a June 13, 2006, "discussion regarding her opposition to treatment given Ms. Collins and Ms. Davis."  [*Id*. at 43].

These statements fail to establish a *prima facie* case of retaliation under Title VII for many of the same reasons Plaintiff's ADA claim also failed.  Plaintiff's statements to Blakey are of no effect here because there is no evidence that Blakey had any influence over Plaintiff's working conditions, nor is there any admissible evidence that Blakey related Plaintiff's statements to Wood or any other decisionmaker.

---

[39]    This is the only time any derivative of the word "pregnant" appears in Plaintiff's response.  [*See* Doc. 186, *passim*].

AO 72A
(Rev.8/8
2)

*See supra* § III.C.2.b.i.  Likewise, again presuming that Plaintiff's allegation regarding her October 2005 conversation with Wood is sufficient to allege opposition to pregnancy discrimination proscribed under Title VII, it again fails for lack of temporal proximity to any adverse employment action.  *See id.*  Plaintiff's representation regarding Lockheed's receipt of a "threat of suit and demand" regarding Collins's and Davis's claims is also unavailing because there is no evidence that Wood knew about the demand or that it in any way implicated Plaintiff, and, moreover, because Plaintiff relies on an unauthenticated document and her own declaration as evidence of the communication and provides no basis for her knowledge.  [*See* Doc. 186 at 14-15]; *see Corwin*, 475 F.3d at 1249.  Finally, Plaintiff has presented no evidence that she had a conversation on June 13, 2006, with Wood or anyone else on the topic of "her opposition to the treatment given Ms. Collins and Ms. Davis," and thus, this assertion is also without effect.  [*See* Doc. 186 at 43, citing an unsupportive paragraph of Plaintiff's declaration]; *see Corwin*, 475 F.3d at 1249.

Consequently, should the claim not be disposed of upon other grounds, the undersigned **RECOMMENDS** to the District Court that Lockheed's motion for summary judgment on Plaintiff's Title VII pregnancy-discrimination retaliation claim (Count 6) be **GRANTED** for failure to establish a *prima facie* case.

85

### iii.  Title VII and § 1981 Race-Based Discrimination

In the complaint, Plaintiff alleges that Defendants retaliated against her because she engaged in activities protected under § 1981 and Title VII. [Doc. 2 ¶¶ 40 (Count 4), 50-51 (Count 6)].  Although Plaintiff does not specify the facts upon which she bases her claims, the undersigned presumes that she is alleging in these counts that Defendants retaliated against her in response to her opposition to "policies and practices of discrimination with regard to . . . minority employees" who were employed at Lockheed's Marietta facility.  [*See id.* at 2-3, 5].

In its motion for summary judgment, Lockheed assumes that Plaintiff's racial-discrimination retaliation claims are based only on activity she states that she undertook with regard to alleged discrimination against Collins and Davis. [*See* Doc. 177-1 at 30-33].  As discussed above, Plaintiff has failed to proffer evidence establishing that her termination was caused by any protected activity she may have undertaken in relation to Lockheed's alleged discrimination against Collins and Davis.[40] *See supra* §§ III.C.2.b.i., ii.  Thus, to the extent that Plaintiff's race-based retaliation

---

[40]  Wood also argues that any activity Plaintiff may have undertaken with regard to Collins and Davis is not a proper basis for her race-based retaliation claim. [Doc. 178-1 at 29-30, 32].  Because the undersigned has already determined that Plaintiff has failed to establish a *prima facie* case of retaliation with regard to these activities, the undersigned does not reach Wood's argument.

86

claims rely on her activity related to Collins and Davis, they are susceptible to summary judgment.

Wood further argues that because Plaintiff has not shown that she used Lockheed's discrimination reporting mechanisms, her retaliation claims are barred. [Doc. 178-1 at 26-27]. Wood fails to cite any authority for this legal position, however, and the undersigned declines to develop it for him. *See Ware v. United States*, 154 F.R.D. 291, 293 (M.D. Fla. 1994) (refusing to supply argument for party).

Wood also contends that Plaintiff may arguably have put him on notice of her concerns only about allegedly disparate treatment between "Fred Eckhart (Caucasian) and Winifred Johnson (African American) during her employment at Lockheed," and that, in that instance, Plaintiff's belief that Wood had discriminated against Johnson was unreasonable, and Plaintiff did not clearly communicate to Wood that she was concerned about race-based discrimination. [Doc. 178-1 at 27-31]. He further argues that even if the Court credited the statements Plaintiff made to Wood regarding Eckhart and Johnson, they were made more than three months before Wood ended Plaintiff's employment and therefore are too temporally distant to establish causation between Plaintiff's complaints and her termination. [*Id.* at 32]. Plaintiff does not address this argument in her response to Wood's motion for summary judgment; accordingly, the

87

undersigned will presume that she has abandoned any claim that her complaints to Wood regarding race-based discrimination affecting Johnson led to retaliation against Plaintiff.  *See Denney*, 247 F.3d at 1182.

Plaintiff does, however, contend that Defendants retaliated against her in response to her activities related to Lockheed's alleged race-based discrimination against Bond, Henry Reece, and Deon Jones, [Doc. 185 at 11-12, 14-19, 28, 30-33; Doc. 186 at 10, 12, 15-18, 35-36, 38-44], and against "Black" employees in general, [Doc. 185 at 8, 15, 17; Doc. 186 at 16-17].  As previously discussed, Plaintiff has failed to proffer evidence establishing that any protected activity she may have undertaken in relation to Lockheed's alleged discrimination against Bond caused her termination. *See supra* § III.C.2.b.i.  Accordingly, to the extent that Plaintiff's race-based retaliation claims rely on her activity related to Bond, they are susceptible to summary judgment.

With regard to Reece and Jones, Plaintiff states that she "reported her opposition" to Lockheed's discrimination against Reece and Jones to Wood and Blakey "during her employment at Lockheed," [Doc. 186 at 10; *see also* Doc. 185 at 12 (stating that Plaintiff "expressed her opposition to Lockheed's denial of discrimination [sic] against" Reece and Jones to Wood and Blakey)]; that "through her words and conduct, [Plaintiff] communicated to Dr. Wood . . . her belief that [Wood and Isley] wrongly

88

interfered with Mr. Reece's FMLA leave," [Doc. 186 at 14; Doc. 185 at 17-18 (also

stating that Plaintiff "reported improper FMLA denial and discrimination" against

Reece)]; and that she "notified" Wood and Blakey "of the facts surrounding Lockheed's

interference with" Reece's and Jones's federally protected rights and of evidence

showing that leave was being granted in a racially discriminatory manner, [Doc. 186

at 35-36]. With regard to African-American employees in general, Plaintiff states that

she "complained about and objected to how FMLA and other forms of leave sought by

Black employees was opposed by Dr. Wood," [Doc. 185 at 8]; she told Crear "she was

a target for retaliation . . . as a result of her opposition to discrimination and retaliation

toward Black employees seeking FMLA leave," [Doc. 185 at 17]; and she told Blakey

that "Lockheed discriminated against Blacks and that the Medical Unit under Dr. Wood

and Ms. Isley manipulated work restrictions and absence coding to the disadvantage of

Black employees," [Doc. 185 at 15; Doc. 186 at 16-17].

These statements also fail to establish a *prima facie* case of retaliation for

protected activity related to race-based discrimination. As previously discussed,

Plaintiff has not shown that Blakey or Crear related her statements to Wood or had any

influence over her employment. *See supra* §§ III.C.2.b.i.-iv. Thus, the statements do

nothing to establish a *prima facie* case of retaliation. The remainder of the statements

89

are too general and conclusory to establish that Plaintiff participated in statutorily protected activity. As a matter of law, conclusory allegations that do not reference specific statements do not show protected activity. *See Redmond v. Cemex, Inc.*, No. 8:08-cv-884-T-30EAJ, 2009 WL 1748511, at *5 (M.D. Fla. June 19, 2009) ("[I]t is imperative for an analysis of whether Plaintiff engaged in statutorily protected activity to know specifically what Plaintiff reported to Defendant . . . ."); *Blasingame v. Gen. Motors Corp.*, No. 1:05-CV-1313-GET, 2007 WL 420190, at *10 (N.D. Ga. Feb. 5, 2007) (Tidwell, J.) (rejecting the plaintiff's "conclusory" allegation that she engaged in "continuous protected activity") (citing *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value."); *Dixon v. Rave Motion Pictures, Inc.*, No. 2:05C326-SRW, 2006 WL 4483152, at *14 (M.D. Ala. Oct. 24, 2006) (granting summary judgment because the plaintiff's evidence was not "sufficiently specific regarding the timing, content and other circumstances of [her] complaints to demonstrate that they constituted protected activity").

For these reasons, should the claim not be disposed of upon other grounds, the undersigned **RECOMMENDS** to the District Court that Defendants' motions for summary judgment on Plaintiff's § 1981 (Count 4) and Title VII (Count 6)

AO 72A
(Rev.8/8
2)

race-discrimination retaliation claims be **GRANTED** for failure to establish a *prima facie* case.

### iv.    FMLA

Finally, the undersigned considers Lockheed's motion for summary judgment on Plaintiff's FMLA retaliation claim. [Doc. 2 ¶¶ 30-34 (Count 2)]. Plaintiff brings the claim against Lockheed for "willfully" and "recklessly" taking adverse employment action against Plaintiff "in response to her complaints and opposition to Lockheed's violations of the FMLA." [Doc. 38 at 27-28; *see also* Doc. 2 ¶¶ 30-34; Doc. 55 at 18]. Lockheed contends that it is entitled to summary judgment on the claim because (1) there is no evidence that Plaintiff had an objectively reasonable belief that Lockheed had violated the FMLA, and therefore, Plaintiff cannot show that she engaged in statutorily protected activity; (2) Plaintiff cannot show causation because Wood did not know of the allegedly protected activity; (3) any protected activity Plaintiff may have undertaken was too remote from her termination to establish causation; and (4) she cannot show that any FMLA violation was willful. [Doc. 177-1 at 36-38].

To establish a willful violation of the FMLA, the plaintiff "must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.' " *Hillstrom v. Best Western TLC Hotel*,

91

354 F.3d 27, 33 (1st Cir. 2003) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), wherein the Court interpreted a parallel distinction between "willful" and "negligent" violations in the context of the FLSA); *accord Bass v. Potter*, 522 F.3d 1098, 1103-04 (10th Cir. 2008); *Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (per curiam); *Hanger v. Lake Cnty.*, 390 F.3d 579, 583 (8th Cir. 2004); *Rico v. Potter*, 377 F.3d 569, 602-03 (6th Cir. 2004). "If an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful," and "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, then it should not be considered willful." *Hillstrom*, 354 F.3d at 33 (internal punctuation omitted); *accord Scheibel v. Huckleberry, Sibley & Harvey Ins. & Bonds, Inc.*, No. 6:09-cv-1249-ORL-28GJK, 2009 WL 4627910, at *1 (M.D. Fla. Dec. 2, 2009). "The question is not whether [the employer] violated the FMLA or its regulations," but rather, "whether a genuine issue of material fact exists as to whether [the employer] willfully violated the Act." *Bass*, 522 F.3d at 1104.

Plaintiff does not allege or offer any evidence to prove that Lockheed engaged in a willful or reckless violation of the FMLA. [*See* Doc. 186, *passim*]. Because the only FMLA claim Plaintiff brings is a willful-violation claim, her failure to offer any

AO 72A
(Rev.8/8
2)

evidence of willful violation is fatal to her claim. [*See* Doc. 38 at 27-28 (conceding that Plaintiff's only FMLA claim is one for willful violation of the act)].

Accordingly, should the claim not be disposed of upon other grounds, the undersigned **RECOMMENDS** to the District Court that Lockheed's motion for summary judgment on Plaintiff's claim for willful violation of the FMLA (Count 2) be **GRANTED**.

### c.    Pretext

In the event that the District Court should decline to enter summary judgment on all of Plaintiff's claims upon any of the above-discussed grounds, the undersigned will examine the parties' arguments regarding pretext.

Should the District Court find that Plaintiff met her *prima facie* case burden under the ADA, Title VII, § 1981 or the FMLA, the burden of production switches to Defendants to demonstrate that their decision to terminate Plaintiff's employment was based on legitimate non-discriminatory grounds. *See Kelliher*, 313 F.3d at 1275. They have done so by asserting that (1) Lockheed never added Plaintiff as an employee because it never hired another FMLA Coordinator employee after Lundy, and (2) Wood terminated Plaintiff from her FMLA Coordinator contractor position because he believed that Plaintiff had performance issues–she failed to timely update her FMLA

93

paper files, and Wood received complaints about lack of coding and Plaintiff's rude behavior toward Lundy and two FMLA applicants. [Doc. 177-1 at 25-26; Doc. 178-1 at 32-34; LM's SMF ¶¶ 46-47, 61-62]; (P's Resp. ¶¶ 46-52, 61-62; P's SMF (LM) ¶¶ 109-12, 114-17; LM's Resp. ¶¶ 109-12, 114-17; W's SMF ¶¶ 43-44; P's Resp. ¶¶ 43-44). As such, the burden switches back to Plaintiff to demonstrate that the reasons asserted by Defendants are pretext for discrimination. *See Kelliher*, 313 F.3d at 1275.

A plaintiff may demonstrate pretext by showing that the non-discriminatory reason the employer offered for its decision should not be believed or by showing that, in light of all the evidence, discriminatory reasons more likely motivated the decision than the proffered reasons. *Boex v. OFS Fitel, LLC*, 339 F. Supp. 2d 1352, 1364 (N.D. Ga. 2004) (Cooper, J.) (citing *Standard*, 161 F.3d at 1332). Plaintiff argues that (1) she was never corrected or counseled for interrupting Lundy, and her relationship with Lundy did not affect the quality of her work, [Doc. 185 at 20-21; Doc. 186 at 18-19]; (2) Wood never mentioned to Plaintiff the complaint he received from one of the FMLA applicants, [Doc. 186 at 19]; (3) Plaintiff updated the FMLA paper files as soon as she could, worked overtime to do so, and was never disciplined for tardy filing, [*id*. at 19-20]; (4) timely filing was "not relevant" because "FMLA

94

status was recorded in computer records that were readily accessible whether or not the chart had been returned to a filing cabinet," [*id*. at 19]; and, (5) in any case, her performance "was not a license to interfere with, harass, humiliate or shun her," [Doc. 185 at 30; Doc. 196 at 36-37].  She also implies that because there is no paper record of her alleged performance deficiencies, Defendants' proffered reasons are not credible.[41]  [Doc. 186 at 38-39].

The lack of a counseling record does give the undersigned pause.  However, Defendants explain that Wood did not issue written warnings or keep a personnel file for Plaintiff because she was a contract worker and that when contract workers had performance problems, "Wood normally verbally counseled them and spoke with their

---

[41]    Plaintiff asserts that she was still in good standing with Lockheed on April 3, 2006.  (P's SMF (LM) ¶ 127).  The evidence she cites in support of this assertion, however, is an unauthenticated e-mail between two Global employees. (*Id*., citing Pl.'s Decl., Ex. 5 [Doc. 186-8]).  The Court must disregard this inadmissible hearsay evidence.  *See Corwin*, 475 F.3d at 1249.

Plaintiff also again points out that she was terminated very soon after she spoke with Lockheed's EEOC investigator about a charge of racial and disability discrimination he was investigating.  [Doc. 186 at 38-39].  Again, temporal proximity alone is insufficient to create a genuine issue of material fact with regard to knowledge.  *See Raney*, 120 F.3d at 1197 (holding that although awareness may be established based on circumstantial evidence, "curious timing" and speculation are insufficient to enable a plaintiff to survive summary judgment).

95

staffing agency about the performance problems in an effort to get them to improve,"
(LM's Resp. P SMF ¶ 37), and Plaintiff does not offer evidence showing this was not
Lockheed's typical practice, *see Morrison v. Booth*, 763 F.2d 1366, 1374
(11th Cir. 1985) ("Departures from normal procedures may be suggestive of
discrimination."). Nevertheless, the only record evidence related to even a verbal
"counseling session" is the discussion that took place between Wood and Plaintiff on
June 13, 2006, and the content of that discussion is disputed–Wood asserts that he "was
critical of [Plaintiff's] performance" and specifically mentioned one of the FMLA
applicants Plaintiff had angered, (LM's SMF ¶ 65), and Plaintiff describes what she
perceived to be a thinly veiled threat to fire her if she continued to involve herself in
claims of discrimination on behalf of Lockheed employees, (P's SMF (LM) ¶¶ 97-99).
At first glance, it seems questionable that Wood simply dismissed Plaintiff for poor
performance without giving Plaintiff any notice at all that he considered her work to be
sub-par.

Nevertheless, it is Plaintiff's burden to show evidence that would allow a
reasonable jury to determine that, more likely than not, retaliatory intent fueled the
decision to fire her. *See Kelliher*, 313 F.3d at 1275. To avoid summary judgment, a
plaintiff "must introduce significantly probative evidence showing that the asserted

AO 72A
(Rev.8/8
2)

reason is merely a pretext for discrimination." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (internal punctuation omitted) (quoting *Coats & Clark*, 990 F.2d at 1228). In other words, a plaintiff "must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Alvarez*, 610 F.3d at 1265 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).

The undersigned finds that she has failed to do so. First, although there is no written record of Wood's dissatisfaction with Plaintiff's performance and it is disputed whether he counseled Plaintiff directly regarding any of the deficiencies he perceived, it is undisputed that after the June 13 meeting, Wood did speak with one of Plaintiff's supervisors at Global both by phone and in person and informed her "that essential parts of Plaintiff's work were not getting done." (LM's SMF ¶¶ 70-73; P's Resp.¶¶ 70-73). Second, Plaintiff does not dispute Defendants' assertion that Lundy complained to Wood more than once that Plaintiff would interrupt Lundy and correct her in front of employees she was counseling. (LM's SMF ¶¶ 46-47; P's Resp. ¶¶ 46-47). Third, Plaintiff does not dispute that an employee complained to Wood "that when she was meeting with Lundy about her FMLA request, Plaintiff

97

interrupted, told her that she had psychological issues, and handed her a card for the Company's EAP counselor," which led Wood to apologize to the employee and her shop steward and assure them "that such behavior would not happen again." (LM's SMF ¶¶ 48-49; P's Resp. ¶¶ 48-49).  Fourth, Plaintiff does not dispute that another employee told Wood that Plaintiff treated him rudely when he spoke to her about his FMLA application and that Plaintiff had explained her behavior to him by stating that the employee "treated his own employees badly and she was simply giving him a taste of his own medicine," which led to more apologies and assurances from Wood.  (LM's SMF ¶¶ 50-53; P's Resp. ¶¶ 50-53).  Fifth, although Plaintiff states that she "worked overtime" to ensure that her computer coding was "accurate and up to date" and that she "performed filing daily," she does not deny that "[b]ecause Plaintiff's filing was not current, Medical Department staff sometimes unknowingly made decisions based upon incomplete information, resulting in inconvenience to the employees who requested the FMLA leave and additional work for the Medical Department staff who had to correct the errors."   (LM's SMF ¶¶ 56-59; P's Resp.¶¶ 56-59).  Sixth, although she asserts that she recorded FMLA leave "as trained and did so timely," Plaintiff does not deny that when other managers complained to Wood about FMLA coding, Wood discovered that "while Plaintiff had

98

documented the approved FMLA leave on the employees' FMLA charts, she had failed to enter the code into the computer system." (LM's SMF ¶¶ 61-62; P's Resp. ¶¶ 61-62).

"[T]he pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." *See Hankins v. AirTran Airways, Inc.*, 237 Fed. Appx. 513, 522 (11th Cir. Jun. 14, 2007). Thus, Plaintiff must show that Defendant could not honestly believe that Plaintiff's performance warranted termination of her employment. *See id.* Plaintiff's arguments that she was not counseled and that her tardy paper filing did not matter do not demonstrate that Defendant did not honestly believe that Plaintiff's performance had become unacceptably substandard. As a result, Plaintiff has not established a genuine issue of material fact as to pretext for her retaliation claims.

Accordingly, as there is no genuine issue of material fact to be tried in this regard, should the retaliation claims not be disposed of upon other grounds, the undersigned Magistrate Judge **RECOMMENDS** to the District Court that Defendants' motions for summary judgment be **GRANTED** for want of showing of pretext.

## IV.   *Conclusion*

The undersigned **RECOMMENDS** to the District Court that because Civil Action No. 10-cv-1109 has already been consolidated with this action that the Court

AO 72A
(Rev.8/8
2)

**ADMINISTRATIVELY CLOSE** Civil Action No. 10-cv-1109 and **ORDER** that all further filings associated with Plaintiff's claims against Wood as alleged in the complaint filed in Civil Action No. 1:09-cv-1936 or in Civil Action No. 1:10-cv-1109 be entered on the docket of the instant matter (Civil Action No. 09-cv-1936-SCJ-AJB).

As discussed above, the Court further **RECOMMENDS** that the District Court **GRANT** Defendants' motions for summary judgment, [Docs. 177, 178], and **DIRECT** the Clerk to **CLOSE** the case for two overarching reasons: (1) the Court does not have jurisdiction over the demand for declaratory judgment, and (2) Plaintiff's claims for damages are barred by the doctrine of judicial estoppel. Should the District Court disagree with this recommendation, the undersigned alternatively recommends that it **GRANT** Defendants' motions for summary judgment for the following reasons:

A.  ADA Retaliation (Count 1) (Lockheed)

1.  Failure to establish a *prima facie* case of retaliation. *See supra* § III.C.2.b.i.

2.  Failure to exhaust administrative remedies. *See supra* § III.B.3.a.

3.  Failure to establish pretext. *See supra* § III.C.2.c.

B.  Willful Violation of the FMLA (Retaliation) (Count 2) (Lockheed)

100

      1.      Failure to establish a *prima facie* case of retaliation.  *See supra* § III.C.2.b.iv.

      2.      Failure to establish pretext.  *See supra* § III.C.2.c.

C.      Section 1981 (Count 3 - Disparate Treatment and Hostile Work Environment; Count 4 - Retaliation) (Lockheed and Wood)

      1.      The failure-to-hire claims are time-barred.  *See supra* § III.B.2.

      2.      Failure to establish a *prima facie* case of disparate treatment.  *See supra* § III.C.1.a.

      3.      Failure to establish a *prima facie* case of racial harassment.  *See supra* § III.C.1.b.

      4.      Failure to establish a *prima facie* case of retaliation.  *See supra* § III.C.2.b.iii.

      5.      Failure to establish pretext.  *See supra* § III.C.2.c.

D.      Title VII and 42 U.S.C. § 1981a (Lockheed) (Count 5 - Discrimination; Count 6 (Retaliation)

      1.      Failure to establish a *prima facie* case of disparate treatment.  *See supra* § III.C.1.a.

101

AO 72A
(Rev.8/8
2)

2.    Failure to establish a *prima facie* case of retaliation. *See supra* §§ III.C.2.b.ii, iii.

3.    Failure to establish pretext. *See supra* § III.C.2.c.

The Clerk is **DIRECTED** to terminate reference to the undersigned Magistrate Judge.

**IT IS SO RECOMMENDED AND DIRECTED**, this the 6th day of February, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

102